### L. H. HARRIS DRUG Co. v. STUCKY.

*(Circuit Court, W. D. Pennsylvania. June 11, 1891.)*

1. TRADE-MARKS—WHAT WILL BE PROTECTED.
   An application for a trade-mark stated that it consisted "essentially of the illustration of a boy in a position indicating suffering from cramps." Immediately below the figure of the boy were the words "Cramp cure," forming part of the expression, "Cramp cure for every ache or pain," but the applicant stated that this descriptive matter might be altered or omitted at pleasure, without affecting the character of the trade-mark. *Held*, that the trade-mark consisted in the design of the suffering boy, which the application stated to be the essential feature, and that the words "Cramp cure" formed no part thereof.

2. SAME—DESCRIPTIVE WORDS—"CRAMP CURE."
   The words "Cramp cure" are descriptive of the purpose and character of the medicine, and cannot, therefore, be appropriated as a trade-mark by the manufacturers of a remedy for the disease.

3. SAME—STATUTORY REGULATIONS.
   The right to trade-marks, and the remedies for their protection, exist independently of statutory regulations; and therefore the fact that Act Cong. March 3, 1881, § 3, fails to enumerate descriptive words in the list of limitations on the right to the registry of trade-marks, does not by implication validate a trade-mark consisting of such words.

In Equity.
*J. H. Porte* and *W. Bakewell & Sons*, for complainant.
*W. B. Negley* and *Bruce Miller*, for defendant.
Before ACHESON, C. J., and REED, J.

REED, J. The plaintiff in this case, claiming to be the owner, as the assignee and successor of Dr. L. H. Harris, of a certain trade-mark registered by him, February 3, 1885, under the provisions of the act of congress of March 3, 1881, alleged infringement by the defendant, and prayed for an injunction and account. The defendant denied the right of the plaintiff to the exclusive use of the words "Cramp cure," which were the words used by plaintiff and defendant, and in controversy, because not part of the registered·trade-mark, or, if held to be part of the registered trade-mark, denied that any exclusive right to the use of those words could legally be claimed by Dr. Harris or his successors, and de-

nied infringement of any trade-mark to which plaintiff has an exclusive and legal right. The case was heard on bill, answer, and proofs.

The first question to be considered is the dispute between the parties as to what the trade-mark which was registered really is. The application filed by Dr. Harris states that he has adopted for his use a trademark for a medicine for the cure of cramps, and further says:

"The said trade-mark consists essentially of the illustration of a boy in a position indicating suffering from cramps. In connection with this figure are the words 'Cramp cure,' placed just below the figure. The figure of the boy is shown in connection with a landscape, and on either side of the figure is a basket, containing various kinds of fruits. The basket on the right hand side of the boy is standing upright, while the other is tilted over on one side, with the fruit partially scattered over the ground. At the top of the picture is the title and name 'Dr. Harris,' and below, near the bottom of the same, are arranged the words, 'Cramp cure for every ache and pain.' These have generally been arranged as shown in the accompanying *fac simile*, but the landscape, baskets, and descriptive matter may be omitted or changed at pleasure, without materially altering the character of the trade-mark, the essential feature of which is the illustration of the boy apparently in great pain."

From the description in the application it would appear that the words "Cramp cure" are used twice, but the accompanying *fac simile* shows the words to be used but once, forming, just below the figure of the boy, part of the expression, "Cramp cure for every ache or pain." The proper construction of the statement is that the trade-mark registered was the design of the suffering boy, which the application states to be the essential feature. The reservation of the right to omit the descriptive matter, which includes the words "Cramp cure," shows that the applicant did not regard those words as part of the trade-mark.

But conceding for the present that the words "Cramp cure," are a portion of the trade-mark, as claimed by plaintiff, are they such words as can properly be claimed and used exclusively by the plaintiff as a trademark? "The object of a trade-mark is to indicate, either by its own meaning, or by association, the origin or ownership of the article to which it is applied. If it did not, it would serve no useful purpose, either to the manufacturer or the public; it would afford no protection to either against the sale of a spurious, in place of the genuine, article." *Manufacturing Co.* v. *Trainer*, 101 U. S. 51. "No one can claim protection for the exclusive use of a trade-mark or trade-name, which would practically give him a monopoly in the sale of any goods other than those produced or made by himself. If he could, the public would be injured, rather than protected, for competition would be destroyed. Nor can a generic name, or a name merely descriptive of an article of trade, of its qualities, ingredients, or characteristics, be employed as a trademark, and the exclusive use of it be entitled to protection." *Canal Co.* v. *Clark*, 13 Wall. 311; *Lawrence Manuf'g Co.* v. *Tennessee Manuf'g Co.*, 138 U. S. 537, 11 Sup. Ct. Rep. 396. "The general proposition is well established that words which are merely descriptive of the character, qualities, or composition of an article, or of the place where it is manufactured or produced, cannot be monopolized as a trade-mark; and we think

the words 'Iron Bitters' so far indicative of the ingredients, characteristics, and purposes of the plaintiff's preparation as to fall within the scope of the decisions." *Chemical Co.* v. *Meyer*, 11 Sup. Ct. Rep. 625, 139 U. S. 540. "The general rule is against appropriating mere words as a trademark. An exception is of those indicating origin or ownership, having no reference to use. Words are but symbols. When they are used to signify a fact, or when, with what purpose soever used, they do signify a fact, which others may, by the use of them, express with equal truth, others may have an equal right to them for that purpose." *Caswell* v. *Davis*, 58 N. Y. 230. A mere general description, by words in common use, of a kind of article, or of its nature or qualities, cannot, of itself, be the subject of a trade-mark. *Gilman* v. *Hunnewell*, 122 Mass. 148. And in that case the court held that the plaintiff could not have a trade-mark in the descriptive words "Cough remedy." "Cramp" is a common term, well understood to relate to a painful affection of the muscles, and frequently associated with an acute disease of the stomach or bowels. Dr. Harris, in his statement filed when the trade-mark was registered, states that the description of goods on which he uses the trade-mark is a medicine for the cure of cramps. In Dunglison's Medical Dictionary, "Cramp" is defined as "a sudden, involuntary, and highly painful contraction of a muscle or muscles. It is most frequently experienced in the lower extremities, and is a common symptom of certain affections, as of *colica pictonum* and *cholera morbus*." "Cramp of the stomach" he defines as "a sudden, violent, and most painful affection of the stomach, with sense of constriction in the *epigastrium*." In a work entitled "Reference Handbook of Medical Sciences," referred to by defendant's counsel, "cramp" is defined as "a term applied to a painful tonic muscular contraction, of some moments' or minutes' duration. As several of these painful contractions generally occur successively, the term 'cramps' is used to designate the disease." The Century Dictionary defines "cramps" as "an involuntary and painful contraction of a muscle; a variety of tonic spasm. Cramp is often associated with constriction and griping pains of the stomach or intestines." When Dr. Harris in his statement described his medicine as intended for the cure of cramps, he evidently used the word "cramps" as a common and well-understood term, relating to a painful disease of the stomach or bowels. The words "Cramp cure" are therefore descriptive of the purpose and character of the medicine, and cannot, under the rulings, be exclusively appropriated by the manufacturer of a remedy for the disease.

Plaintiff's counsel, however, while insisting that, according to the general rules upon the subject, the words "Cramp cure" are a portion and a valid portion of the trade-mark, and are not words simply descriptive of the purpose and character of the medicine, have argued that the trade-mark, being registered under the act of congress of March 3, 1881, the decisions of the courts upon this question, when not made as to trade-marks registered under the act of congress, are not generally pertinent, and should not be controlling. That the act of 1881 contains certain limitations upon the registry of trade-marks, limitations so ex-

plicit as to warrant the necessary conclusion that all else that comes within the idea of a trade-mark may be lawfully used as such. That these limitations are in the following words, taken from section 3 of the act:

"No alleged trade-mark shall be registered, unless the same appear to be lawfully used as such by the applicant in foreign commerce or commerce with Indian tribes, as above mentioned; or is within the provision of a treaty, convention, or declaration, with a foreign power; nor which is merely the name of the applicant; nor which is identical with a registered or known trade-mark owned by another, and appropriate to the same class of merchandise; or which so nearly resembles some other persons' lawful trade-mark as to be likely to cause confusion or mistake in the mind of the public, or to deceive purchasers."

Plaintiff's counsel argue that, as to the specific character of the trade-mark, and the words or signs that may be employed, there is no limitation as to the use of descriptive names, or names indicative of the purpose of the article, or to which it may be applied; that the tests set up by the act of congress are that the proposed trade-mark shall not be the mere name of the applicant, and that it shall not have been used before by others as applied to the same class of merchandise. An examination of the act of congress shows that it does not sustain plaintiff's position. The act does not define a trade-mark. It provides that the owner of a trade-mark, used in commerce with foreign nations, etc., may obtain registration of such trade-mark by complying with certain requirements and regulations, among which is the filing of a written declaration that the registering party has a right to the use of the trade-mark sought to be registered. It provides, as quoted above, that no alleged trade-mark shall be registered, unless the same appear to be lawfully used by the applicant in foreign commerce, etc. It provides that, in an application for registration, the commissioner of patents shall decide the presumptive lawfulness of claim to the alleged trade-mark, provides that the registration shall be *prima facie* evidence of ownership, and provides that nothing in the act shall prevent, lessen, impeach, or avoid any remedy, at law or in equity, which any party aggrieved might have had if the act had not been passed. The evident purpose of the act was, by registration, to protect an existing valid trade-mark, when used in certain cases, not to create, by the registration, a trade-mark which had otherwise no existence or validity. As in the construction of the penal statutes of the United States it is frequently necessary to look to the common law, in order to ascertain the nature of the crime, and the definition of the term used by the statutes, so, in applying the act of 1881, and ascertaining the rights conferred by it, it is necessary to turn to the decisions of the courts for the rule which will define the valid legal trade-mark which is protected by registration under the act. By the exception of certain specified things from registry, congress has limited the trade-marks which may be registered, but it has not said that those which are registered are thereby made valid trade-marks. Such a construction of the act would be contrary to the well-known doctrine of the *Trade-Mark Cases,* 100 U. S. 82, where the supreme court say that a

right to adopt and use a trade-mark to distinguish the goods or property made or sold by the person whose mark it is, to the exclusion of use by all other persons, has long been recognized by the common law and chancery courts of England and this country; that it is a property right, which was not created by the act of congress, and does not depend upon it for enforcement; and that the whole system of trade-mark property, and the civil remedies for its protection, existed long anterior to that act, and have remained in full force since its passage; and the court having in that case declared the act of 1870 unconstitutional, and having said, in that case, that the only constitutional authority, which might possibly be invoked to justify congressional legislation upon the subject of trade-marks, was the power to regulate interstate and foreign commerce, it would require very positive and clear language in the act of 1881 to warrant the conclusion that congress intended, by the mere act of registration, to make that a trade-mark which would have been held invalid by the common-law and chancery courts. "The act of congress fortifies the common-law right to a trade-mark by conferring a statutory title upon the owner, but, as was said of a former act, ' property in trade-marks does not derive its existence from an act of congress.' The present act does not abridge or qualify the common-law right, but by the express terms of section 10 preserves it intact." *La Croix* v. *May*, 15 Fed. Rep. 236. "It will be observed that the statute [Act 1870] under which the claim is made does not define the term 'trade-mark,' or say of what it shall consist. The term is used as though its signification was already known in the law. It speaks of it as an already existing thing, and protects it as such. The thing to be protected must be an existing lawful trade-mark, or something that may then for the first time be adopted as a lawful trade-mark independent of the statute. There must be a lawful trade-mark adopted without reference to the statute, and then, by taking the prescribed steps, that trade-mark, so already created and existing, may receive certain further protection under the statute." *Moorman* v. *Hoge*, 2 Sawy. 78. The reasoning of this opinion, referring to the act of 1870, is also applicable to the act of 1881, the prohibitions against registry being substantially the same in both acts.

Aside from the use of the words "Cramp cure," there is no resemblance between the label used by the defendant and that used by the plaintiff. The defendant's label bears the words, "Stucky's diarrhœa and cramp cure. This preparation will be found invaluable for the cure and relief of diarrhœa, cramps, *cholera morbus*, dysentery, summer complaint, and pains in the stomach." Then follow the directions for use, and at the foot of the label are the words, "Prepared only by Emil G. Stucky, Druggist, Cor. 24th St. and Penn Ave., Pittsburgh, Pa." This label, which is used on the bottle containing the medicine, and which has been offered in evidence, is printed in black ink. The wrapper or box in which the bottle is inclosed has substantially the same inscription printed in black ink. The plaintiff's label bears the words, "Dr. Harris' cramp cure. A specific for cholera, cramps, pain in the stomach, &c., &c." Then follow the directions, and at the foot of the label are the words,

"L. H. Harris Drug Co." The label is printed in red and gold letters. The wrapper or box has substantially the same inscription, together with the design of the "boy apparently in great pain," and the baskets referred to in the statement filed in the patent-office, and under the design are printed the words, "Trade-mark." The inscription and design are printed in red ink. The bottles are the ordinary medicine bottles used in the trade. The defendant's label and package do not bear such a resemblance to those of the plaintiff as to lead a purchaser to buy either under the impression that he is buying the other, and there is no imitation or infringement of what is here held to be the plaintiff's trade-mark, nor is there such resemblance as to suggest an apparent intention to deceive or mislead the public, or injure the sale of the goods of the plaintiff. The plaintiff has failed to make out its case, and the bill must be dismissed. Let a decree be prepared accordingly.