## RICHTER v. REYNOLDS et al.

### (Circuit Court of Appeals, Third Circuit. December 12, 1893.)

### No. 21.

**1. TRADE-MARKS—INTENTION TO ADOPT.**

Sales of medical preparations in this country by a foreign manufacturer, to a limited extent, upon special orders, to supply particular customers, do not amount to use in such circumstances as to publicity, and to such length of use, as show an intention to adopt a symbol placed upon such preparations as a trade-mark. Kohler Manuf'g Co. v. Beshore, 53 Fed. 262, followed. 52 Fed. 455, affirmed.

**2. SAME—REGISTRY AS EVIDENCE OF INTENTION.**

The registry of a trade-mark under the act of March 3, 1881, may be evidence in a suit to restrain infringement of a common-law trade-mark used for the same article in domestic commerce, to show what complainant really claimed. Kohler Manuf'g Co. v. Beshore, 53 Fed. 262, followed.

**3. SAME.**

The registry of a trade-mark, the essential feature of which is described as the representation of a red anchor in an oval space, is not proof of intention to adopt a trade-mark consisting of the word "anchor" and the symbol of an anchor, irrespective of color and surroundings. 52 Fed. 455, affirmed.

**4. TREATY WITH GERMANY—CONSTRUCTION.**

The treaty of 1871 between the United States and Germany, (article 17; 17 Stat. 931,) which provides that, with regard to the marks of labels of goods, or of their packages, the citizens of Germany shall enjoy in the United States the same protection as native citizens, does not give to a citizen of Germany who has acquired the right to a trade-mark in that country a similar right to the trade-mark in the United States.

Appeal from the United States Circuit Court for the Western District of Pennsylvania.

In Equity. Suit by Dr. F. Ad. Richter, doing business as F. Ad. Richter & Co., against W. E. Reynolds and John Sullivan, doing business as the Anchor Remedy Company, for infringement of a trademark. Bill dismissed. 52 Fed. 455. Complainant appeals. Affirmed.

Wm. L. Pierce and Arthur v. Briesen, for appellant.

Before DALLAS, Circuit Judge, and BUTLER and GREEN, District Judges.

DALLAS, Circuit Judge. There are 17 assignments of error in this case. Only 2 of them relate to matters of fact, and by them it is alleged that the circuit court erred—

"In finding that complainant had made no sales in this country of medicinal compounds bearing the trade-mark in issue prior to the date of the opening of his New York branch house; and in finding that the complainant had not made sales in the United States, nor importations thereto, prior to his registration of 1885."

What the court said is:

"The proofs show that the plaintiff's factory is at Rudolstadt, Germany, where his goods are and always have been manufactured, marked, labeled, and put up for the market. All the plaintiff's medical compounds, of which we have before us many specimens, are unmistakably German preparations. with printed labels, directions, etc., thereon in that language, although having

also labels in English; and they are all distinctly marked, 'Manufactured by F. Ad. Richter & Co.' The bill, it will be perceived, is quite indefinite as to the length of time the plaintiff had been engaged in the city of New York in the sale of his medicines before this suit was brought. Nor do his proofs certainly fix the date when his branch sales house was established in that city. It was undoubtedly after May 1, 1887, for Charles Bernhart Drugulin, who opened that house for the plaintiff, did not leave Rudolstadt until that date. Prior to that time the plaintiff had no establishment in the United States. Neither had he ever sold any of his medical compounds in this country before he opened his New York branch house. It is true there had been previously some importations, to a limited extent, into the United States, of the plaintiff's medicines, but by druggists and others who sent orders for the medicines to Rudolstadt, to supply persons who had lived in Europe, and there had used them."

The record sustains this finding; and the other material facts are so well and fully presented by the learned judge of the court below that it would be superfluous to here detail them at length, especially in the absence of any specification respecting them.

The propositions affirmed by the remaining assignments, so far as they raise any question which it is necessary for us to consider, are that (1) the complainant had a common-law right to the word "Anchor" as his trade-mark in this country; and, also, to the symbol of an anchor, irrespective of color and surroundings; (2) the complainant had, by registry in this country, a trade-mark consisting of the word "Anchor" and the symbol of an anchor, irrespective of color and surroundings; and (3) by virtue of a certain treaty between Germany and the United States; the acquisition by complainant, as alleged, of a right to the trade-mark in issue in Germany, was also the acquisition of that right in the United States.

The first of these propositions cannot be maintained, in view of the opinion of this court delivered by the circuit justice during the present term, in the case of Manufacturing Co. v. Beeshore, 59 Fed. 572. That opinion deals with the character of the use which is requisite to the acquisition of title to a trade-mark, and also with the effect of the registry of one device upon a claim made by the same person to a different device as a common-law trade-mark for use upon the same kind of goods. In that case the use shown was the sale of a few dozen bottles of a proprietary medicine, having written labels thereon which displayed the collocation of words which was claimed; and the registry in the patent office was of the words "One Night Cure," while those set up by the plaintiff, and to which he asserted a common-law title, were "One Night Cough Cure." This court said:

"Complaint is also made of the court below in holding that there was no sufficient evidence that the plaintiff had acquired a trade-mark in the collocation of words stated. It may be, as is argued by complainant's counsel, that the interference of a court of equity does not depend on the length of time the name has been used, and that the rule is, that he who first adopts a trade-mark acquires the right to its exclusive use in connection with the particular class of merchandise to which its use had been applied. Nevertheless, however short the time may be in which a person may acquire a title to a trade-mark, there must be shown an actual intention to acquire such a title. A merely casual use, interrupted, or for a brief period, would not support a claim to a trade-mark. Menendez v. Holt, 128 U. S. 514, 9 Sup. Ct. 143. Nor will a court of equity recognize by injunction a proprietary right in

a phrase or name, unless it has been used in circumstances, as to publicity and length of use, as to show an intention to adopt it as a trade-mark for a specific article. We agree with the court below in thinking that the complainant's evidence in these particulars was very unsatisfactory. A sale of a few dozen bottles, with written labels pasted on the bottles, in the circumstances disclosed by the evidence, could not suffice to establish such an intentional use and appropriation of the words as a trade-mark as to warrant the interference of a court of equity.

"Moreover, while we do not think it necessary to hold that mere registry in the patent office of the United States of a trade-mark for a specific article of manufacture would of itself prevent the use and adoption of another device as a common-law trade-mark in domestic markets, yet such registry can operate as evidence tending to show what was really claimed by the complainant."

Reference was also made to the decision of the present case by the circuit court, as reported in 52 Fed., at page 455, as follows:

"That was the case of a foreigner, who, prior to his registration, had never sold any of his medicines in the United States, and who, not having here a common-law trade-mark, had to depend upon his registry. He alleged in his bill of complaint that the defendants were infringing his trade-mark as registered; and, when met by the defense that the defendants had used the trade-mark prior to the plaintiff's registry, he sought to invoke the doctrine of a common-law trade-mark, and this the court rightfully held he could not do, but that he was restricted to the trade-mark described in his registry. The complainant in that case was unable to support his claim that he had acquired, as against the defendants, a common-law right to the exclusive use of certain words in connection with the manufacture and sale of medical compounds."

The defendants in the case before us, had, in good faith, used the mark complained of as early as in the fall of 1887; and, as appears from the findings of the court below, the complainant, although there is evidence of his having established a branch house in New York at some time not fixed, but certainly after May 1, 1887, has not shown sales of his medicines in this country prior to the defendants' use, nor any importations, except to a limited extent upon especial orders, to supply particular customers. This is not enough. It does not amount to use "in such circumstances, as to publicity and length of use, as to show an intention to adopt it as a trade-mark for a specific article." It indicates no intention to acquire title, and therefore none was acquired. The judgment in Manufacturing Co. v. Beeshore is conclusive, also, as to the effect of the registry made by the complainant in this country. As late as July 7, 1885, he registered as his trade-mark an accurately and distinctively defined design, the "essential feature of which" [as he then declared] "is the representation of a red anchor in the oval space." As evidence tending to show what was really claimed, or had been intended to be appropriated, the court below was clearly right in taking this into consideration; and, in our opinion, it was right, also, in concluding therefrom that the complainant's intention was to confine his claim of trade-mark to the specific device designated and described, and which he further declared to be the one which he had "adopted." Upon both the grounds which have been discussed, the complainant's claims to the word "Anchor," and to the symbol of an anchor irrespective of its being red, and inclosed in an oval space, were properly rejected.

The complainant registered twice in this country,—once in 1885, as already mentioned, and again in 1889. The mark was not the same in both instances. The registry of 1885 is not set up in the bill, and that, if it had been, it could not have availed the complainant is apparent from what has already been said, inasmuch as the defendants have not marked their goods with anything which, in the sense of the law of trade-mark, is at all like a red anchor in an oval space. The registry of 1889 was made after defendants' rights had accrued and this suit had been threatened. Furthermore, as is said by the learned judge below, the defendants never used the device covered by this registry, or any design in imitation or simulation of it. This disposes of the matter, and no further discussion of it would be profitable.

The courts of the United States take judicial notice of its treaties with other countries, but, where a treaty is relied on the burden is on the party asserting it to inform the court, when, in fact, without knowledge of the subject, of its existence and terms. In this case it does not appear that the point was considered by the court below, but the brief for the complainant informs us that the treaty which he invokes was made between the United States and Germany, in 1871, "to remain in force for ten years, and, in case neither party gave notice, was extended each year for an additional year." The brief adds, "It is therefore understood that its terms are still effective." Article 17 is quoted, as follows: "With regard to the marks of labels of goods, or of their packages, and also with regard to patterns and marks of manufacture and trade, the citizens of Germany shall enjoy in the United States of America, and American citizens shall enjoy in Germany the same protection as native citizens." We accept this statement and the quotation, but what stipulation does the latter disclose, of which the complainant has not had the benefit? His right to enjoy the same protection as, under the laws of the United States, is enjoyed by citizens of the United States, has been fully recognized; and the question raised by him as to the effect in this country of his alleged acquisition of a right in Germany to the mark which he claims in this suit, has been adjudicated in the manner, and under the laws of this country, precisely as any similar question would be adjudicated if presented to the same court for decision, by one of our own citizens. To more than this the complainant was certainly not entitled. The plain intent of the treaty is to reciprocally assure to the citizens of the respective countries the protection of the laws of the other. It was not intended to give to the official acts, or laws, of either country any peculiar extraterritorial effect.

It follows from what has been said that the mark used by the defendants is not used in violation of any right of the complainant; and, therefore, the decree of the circuit court dismissing his bill, with costs, is affirmed.