HENNESSY et al. v. BRAUNSCHWEIGER & CO.

(Circuit Court, N. D. California.    October 10, 1898.)

No. 12,641.

1. TRADE-MARKS—SUIT FOR INFRINGEMENT—JURISDICTION OF FEDERAL COURTS.
    Rights and remedies pertaining to trade-marks generally exist independently of the federal statute, and, where a federal court is given jurisdiction of a suit in equity for the protection of a trade-mark by reason of diverse citizenship of the parties, it is not necessary that the bill should allege that the parties, or either of them, are engaged in foreign commerce, or commerce with Indian tribes, as is required by the act of March 3, 1881, to give jurisdiction where the parties are citizens of the same state.

2. SAME—EFFECT OF REGISTRATION AS EVIDENCE.
    Under the trade-mark act of 1881 the registration of a trade-mark is only prima facie evidence of ownership.

On Demurrer to Bill.

This is a suit for the infringement of a trade-mark. The bill of complaint alleges: That complainants are citizens of the republic of France. That the respondent is a California corporation, having its principal place of business in the city and county of San Francisco. That complainants are co-partners under the firm name of James Hennessy & Co., and have been, and now are, exporters, bottlers, and vendors of a cordial or liquor known as "Hennessy Brandy," which, for upward of 30 years, they have produced, bottled, and sold. "That said brandy, when bottled by these complainants, is put up in peculiar, tall, dark-colored bottles, to wit, twelve inches in height, bearing (a) a rectangular label bearing the inscription 'Jas: Hennessy & Co. Cognac' in gold letters on a white ground, encircled by a wreath of vine leaves and grapes, in gold, said wreath being surmount-

ed by an arm bearing a battle-ax, also in gold; (b) a small oblong label of white, with gold border lines, bearing the word 'France,' in gold; (c) a crescent-shaped label; (d) a cork branded with the words 'James Hennessy & Co.'; (e) a metal capsule,—all with their own proper devices and trademarks, adopted by the complainants for that purpose the year A. D. 1870, and all incased in square wooden boxes holding twelve bottles each. That complainants' trade-mark is duly registered in the office of the commissioner of patents of the United States. Fourth. That by reason of the long experience and great care of the complainants in their said business, and the good quality of said brandy, distinguished as it was by its trade-marks, trade-names, labels, corks, capsules, and the shape, size, and color of its bottles, the same has become widely known in the community and throughout the world as a useful and valuable cordial, and acquired a high reputation as such, and has commanded, and still commands, an extensive sale throughout the United States and Europe, which is and has been a source of great profit to these complainants. That complainants' trade-name and trade-mark are of a value of two thousand dollars and upward. That said brandy, when bottled by complainants, is known as such brandy to the public, buyers and consumers thereof, by the said name of 'James Hennessy & Co.'s Brandy,' or 'Hennessy Brandy,' or 'Hennessy Cognac,' together with the complainants' own proper devices, trade-names, and trade-marks aforesaid, and by its straw wrappers or casings accompanying and inclosing said bottles, and by the peculiar shape and color of the bottles themselves. Fifth. Complainants state that, notwithstanding the long and quiet use and enjoyment by the complainants of said trade-name and trade-mark, and to the form, device, and descriptive matter of said labels, the defendant, well knowing the premises, and with the preconceived intention to injure the complainants, and with the purpose to defraud them, and with the purpose to deprive these complainants of the benefits and profits resulting from the great reputation acquired for said brandy, and the consequent demand therefor, and with the intent to acquire for itself the benefits and profits of said reputation, and with the intent to palm off on the public brandy not being exported, sold, or bottled by complainants, as the goods of the complainants, and in willful disregard of complainants' rights in the premises, kept, offered for sale, and sold, and advertised for sale, and now keeps, offers for sale, and sells, in the city and county of San Francisco and state of California, and elsewhere in the United States of America, a concoction or compound in imitation of complainants' brandy under the name of 'Hennessy Brandy,' using fac similes of complainants' trade-name, devices, and labels, which, with intent to deceive and defraud the public and the buyers and consumers thereof, it has caused to be put up in cases like complainants', and in bottles precisely like those used by these complainants as aforesaid." There are other averments, in the usual form, to the effect that such imitation is calculated to deceive, and has deceived and misled, the public and consumers to believe that the brandy kept, offered, and sold by respondent "is the brandy exported, bottled, and sold by the complainants," and that the article sold by respondent is of a greatly inferior quality, etc. The prayer is for an accounting of the income or profits unlawfully derived from the violation of complainants' rights, and for an injunction. The respondent demurs to this complaint upon the general ground that it does not state such a cause as entitles complainants to any relief, and thereafter enumerates twelve specific grounds of demurrer. The provisions of the act of March 3, 1881, authorizing the registration of trade-marks, to which reference is made in the opinion, are as follows:

"That owners of trade-marks used in commerce with foreign nations, or with the Indian tribes, provided such owners shall be domiciled in the United States, or located in any foreign country or tribes which by treaty, convention or law, affords similar privileges to citizens of the United States, may obtain registration of such trade-marks" by complying with the requirements mentioned in the act. Section 1.

"But no alleged trade-mark shall be registered unless the same appear to be lawfully used as such by the applicant in foreign commerce or commerce with Indian tribes." Section 3.

"Sec. 7. That registration of a trade-mark shall be prima facie evidence of ownership. Any person who shall reproduce, counterfeit, copy or colorably imitate any trade-mark registered under this act and affix the same to merchandise of substantially the same descriptive properties as those described in the registration, shall be liable to an action on the case for damages for the wrongful use of said trade-mark, at the suit of the owner thereof; and the party aggrieved shall also have his remedy according to the course of equity to enjoin the wrongful use of such trade-mark used in foreign commerce or commerce with Indian tribes, as aforesaid, and to recover compensation therefor in any court having jurisdiction over the person guilty of such wrongful act; and courts of the United States shall have original and appellate jurisdiction in such cases without regard to the amount in controversy."

"Sec. 11. That nothing in this act shall be construed as unfavorably affecting a claim to a trade-mark after the term of registration shall have expired: nor to give cognizance to any court of the United States in an action or suit between citizens of the same state, unless the trade-mark in controversy is used on goods intended to be transported to a foreign country, or in lawful commercial intercourse with an Indian tribe."

James L. Hopkins, Adolph L. Pincoffs, and Robert H. Countryman, for complainants.

J. J. Scrivner, for respondent.

HAWLEY, District Judge (orally). Is the complaint defective because it does not aver that the complainants and the respondent "are now, or ever were, engaged in commerce with foreign nations or with Indian tribes"? This is the most important question presented by the demurrer. It was argued by the complainants' counsel that the averments that they "are exporters," and that the brandy "has become widely known in the community and throughout the world, * * * and has commanded * * * an extensive sale throughout the United States and Europe," are sufficient, by inference, at least, to show that complainants "were engaged in commerce with foreign nations." Admitting, for the purpose of this opinion, that such a view might be sustained, the question still remains whether, in order to enable complainants to maintain this suit, or obtain any rights under the act of congress of March 3, 1881, it must, in addition to the averments contained in the bill, be alleged that the respondent, in any of the unlawful acts charged against it, was engaged in commerce with foreign nations. The earliest legislation of congress for the registration and protection of trade-marks was contained in the patent act of 1870, and substantially re-enacted in the Revised Statutes. Act July 8, 1870, c. 230, §§ 77–84; 16 Stat. 210–212; Rev. St. §§ 4937–4947. That legislation, as well as the Act of Aug. 1876, c. 274 (19 Stat. 141), for punishing the counterfeiting of trade-marks, was held by the supreme court, in 1879, to be unconstitutional and void, because not limited to trade-marks used in commerce with foreign nations, or among the several states, or with the Indian tribes. Trade-Mark Cases, 100 U. S. 82, 96. Congress thereafter, in 1881, passed "an act to authorize the registration of trade-marks and protect the same." 21 Stat. 502. This act, as well as that of August 5, 1882, has ever since been treated as valid. Browne, Trade-Marks (2d Ed.) § 281; South Carolina v. Seymour, 153 U. S. 353, 14 Sup. Ct. 871; and authorities hereinafter cited. Section 11 of the act of 1881 is so re-

stricted as not to give cognizance to any court of the United States in an action or suit between citizens of the same state, unless the trade-mark which is in controversy is used on goods intended to be transported to a foreign country, or in lawful commercial intercourse with an Indian tribe. Luyties v. Hollender, 21 Fed. 281. In relation to such cases, the court, in Schumacher v. Schwencke, 26 Fed. 818, said:

"The registration under the statute only confers a right to it in foreign commerce, and a claim for infringement, or to be protected against infringement, cannot arise under the constitution or laws of the United States unless the infringement is upon the right to use it in foreign commerce, which can only be by using the trade-mark without right in such commerce. The jurisdiction is not conferred at all by express words of the statute, but only by providing a mode of acquiring a right, a suit for the invasion of which would arise under the laws of the United States, within the act of 1875. The clause quoted from is restrictive of that jurisdiction. The defendants do not infringe upon any right resting upon the laws of the United States unless they use the trade-mark in foreign commerce, and jurisdiction of a suit for such infringement is not left in the courts of the United States unless such infringement consists in using the trade-mark by the defendants upon goods intended to be transported to a foreign country."

See, also, Luyties v. Hollender, 22 Blatchf. 413, 30 Fed. 632; Graveley v. Graveley, 42 Fed. 265; Prince's Metallic Paint Co. v. Prince Mfg. Co., 53 Fed. 493; Ryder v. Holt, 128 U. S. 525, 9 Sup. Ct. 145.

It will be noticed that in all these cases both parties to the suits were citizens of the same state, and hence it necessarily followed, as is stated in Manufacturing Co. v. Ludeling, 23 Blatchf. 46, 48, 22 Fed. 823, that "the jurisdiction invoked is  *  *  *  founded solely on the act of congress for the protection of trade-marks, and can only be exercised according to the statute which invests the court with authority to hear the controversy." The question, therefore, arises whether in a case like the present, where the jurisdiction of this court is acquired by reason of the fact that the complainants and respondent are not citizens and residents of the same state, the suit can be maintained without reference to the provisions of the federal statute relating to commerce with foreign nations. The principle is well settled that the rights and remedies pertaining to trade-marks generally depend upon the laws of the state, common and statutory, and not upon the laws of the United States. Property in trade-marks exists apart from the statutes regulating their registration, and their validity is not dependent upon such statutes, except as expressly defined thereby.

In Moorman v. Hoge, 2 Sawy. 78, 85, Fed. Cas. No. 9,783, the court said:

"It will be observed that the statute under which the claim is made does not define the term 'trade-mark,' or say of what it shall consist. The term is used as though its signification was already known to the law. It speaks of it as an already existing thing, and protects it as such. The thing to be protected must be an existing lawful 'trade-mark,' or something that may then for the first time be adopted as a lawful trade-mark, independent of the statute. There must be a lawful trade-mark adopted without reference to the statute, and then, by taking the prescribed steps, that trade-mark, so already created and existing, may receive certain further protection under the statute."

In the Trade-Mark Cases, 100 U. S. 82, 92, in relation to this subject, the court said:

"The right to adopt and use a symbol or a device to distinguish the goods or property made or sold by the person whose mark it is, to the exclusion of use by all other persons, has been long recognized by the common law and the chancery courts of England and of this country, and by the statutes of some of the states. It is a property right, for the violation of which damages may be recovered in an action at law; and the continued violation of it will be enjoined by a court of equity, with compensation for past infringement. This exclusive right was not created by the act of congress. and does not now depend upon it for its enforcement. The whole system of trade-mark property and the civil remedies for its protection existed long anterior to that act, and have remained in full force since its passage."

See, also, Drug Co. v. Stucky, 46 Fed. 624, 628; Battle v. Finlay, 50 Fed. 106.

These propositions, as was said in the Trade-Mark Cases, are so well understood as to require neither the citation of authorities nor an elaborate argument to prove them. Interpreting the various provisions of the act of 1881 in the light and reason afforded by the decided cases, my conclusion is that the complaint does state a cause of action against the respondent for an infringement of complainants' trade-mark; that complainants, in order to enable them to maintain this suit, are not required to aver that the parties were engaged "in foreign commerce or commerce with Indian tribes"; and that such an averment is essential only in cases where the action or suit is between citizens of the same state. It follows from the views expressed that the protection afforded to trade-marks, under the common law, by the United States courts, is ample, and that registration under the act of 1881 is of but little, if any, value, except for the purpose of creating a permanent record of the date of adoption and use of the trade-mark, or in cases where it is necessary to give jurisdiction to the United States courts. The right of foreigners to register in the United States is the result of treaty and convention entered into for the purpose of creating mutual rights in trade-marks on the part of the citizens of the United States and those of other countries. The language of section 10 of the act of 1881 preserves all the common-law rights of both citizens and foreigners, and has generally been construed to supply additional means of securing protection for trade-marks, instead of limiting any of the rights which existed prior to the passage of the act. 26 Am. & Eng. Enc. Law, 365, 366. But it has been held in some cases, arising upon special facts, that, if the registration itself shows a claim to a trade-mark more limited in its description than the owner's common-law rights would otherwise be, the owner is bound by such limitation as showing what he really claimed. Manufacturing Co. v. Beeshore, 8 C. C. A. 215, 59 Fed. 572; Richter v. Reynolds, 8 C. C. A. 220, 59 Fed. 577. It is only necessary to add that under the provisions of the act of 1881 the registration of a trade-mark is only prima facie evidence of ownership, and is not conclusive or binding upon the courts as to the right of a party to its exclusive use. Browne, Trade-Marks, § 339; Manufacturing Co. v. Ludeling, 22 Fed. 824, 826. The demurrer in this case—and in all the other cases which were submitted to abide the decision herein—is overruled.