L. Sonneborn Sons, ·Inc., Plaintiff, *v.* Storm Waterproofing Corporation, Defendant.

Supreme Court, New York County, June 20, 1927.

Trade-marks and trade names — infringement — action to restrain defendant's infringement of trade-mark " Stormtight "— temporary injunction will not be granted plaintiff to restrain defendant's circulation of claim that plaintiff's use of word " Stormtight " is infringement of defendant's trade-mark " Stormtite," in absence of proof of bad faith on defendant's part.

In this action to restrain defendant's infringement of a trade-mark, plaintiff is not entitled to a temporary injunction restraining defendant from threatening and intimidating the trade and plaintiff's customers, and from preventing defendant's circulation of the claim that plaintiff's use of the word " Stormtight," in connection with the sale of its commodity, is a violation of defendant's rights or an infringement of defendant's trade-mark " Stormtite," in the absence of proof showing that defendant's announcements were grossly exaggerated or circulated in bad faith.

Application for preliminary injunction in action to enjoin infringement of registered trade-mark.

*Gilbert & Gilbert* [*A. S. Gilbert* of counsel], for the plaintiff.

*Charles H. Wilson* [*Leslie Lester* of counsel], for the defendant.

Levy, J.  Plaintiff seeks a preliminary injunction restraining the defendant from threatening and intimidating the trade in general and plaintiff's customers in particular and to prevent the circulation of the charge or claim that the plaintiff's use of the word " Stormtight " in connection with the sale of plaintiff's commodity is a violation of the defendant's rights or an infringement on any trade-mark of the defendant or is in any other manner illegal.

Both litigating parties are engaged in the manufacture of a paint or composition designed to make roofs and other parts of buildings watertight.  Plaintiff has been using the trade-mark " Stormtight," defendant that of " Stormtite."  It is not entirely clear from the papers which mark was first adopted, although the balance seems to favor defendant's prior use.  This much, however, is undisputed — that plaintiff has a very large business which it has extensively advertised, while defendant's is very much smaller. Early in 1920, after plaintiff had been employing its trade-mark for perhaps seven years, defendant sent notice to plaintiff that the latter was infringing upon its trade-mark.  No attention was apparently paid to this communication, but one year later plaintiff made an application in the United States Patent Office for registra-

tion of the name " Stormtight " under the act of March 19, 1920 — which permitted registration of descriptive trade-marks, in " Class 16, Paints and Painters' Materials." In its application plaintiff claimed use since August, 1913. In September, 1922, it notified defendant that the latter's legend " Stormtite " was an infringement of plaintiff's registered trade-mark. Defendant's reply to this was that it was plaintiff which was infringing. Thereafter defendant, on April 1, 1925, succeeded in having plaintiff's mark canceled by the Examiner of Interferences on the ground that plaintiff had not had " *bona fide* use of the mark disclosed in its registration " within the meaning of section 1(b) of the act of March 19, 1920, the term " *bona fide* use " being considered to mean " sole use." Upon appeal to the Commissioner of Patents the decision of the Examiner was upheld, the former holding in addition that the defendant had employed the notation " Stormtite " at a period prior to its adoption by the plaintiff. Soon after defendant applied for a patent registration of its trade-mark " Stormtite " under the act of February 20, 1905, in " Class 12, Construction Materials." This act permits registration of fanciful or arbitrary trade-marks and, unlike the act of 1920, does not permit the registration of descriptive marks. Registration was completed on August 10, 1926, when defendant began to threaten plaintiff with an action for an injunction. On November 6, 1926, it advised one of plaintiff's customers that in a proceeding in the United States Patent Office it had been awarded " exclusive right to the trade-mark ' Stormtite,' " and notified this customer to desist from the sale of any material which infringed upon its rights. Similar letters were sent to other customers about the same time, and this has continued up to the time of the bringing of this suit. The reaction of plaintiff's customers to these letters in at least two instances has been quite alarming, being followed by a request upon the manufacturer to take up the stock of " Stormtight " on hand. Plaintiff has urged and encouraged defendant to bring an infringement action, but has failed in its efforts.

It is the contention of plaintiff that defendant by its threatening and untrue letters was acting in bad faith for the purpose of terrorizing plaintiff's customers so as to divert them to itself; and it is, therefore, seeking this injunction to prevent further alleged injury. In support of the relief claimed it cites *Atlas Underwear Co.* v. *Cooper Underwear Co.* (210 Fed. 347). In that case (at p. 350) the court held that a patentee could not terrorize trade by calling attention to his rights and seek to enforce such rights through a succession of threats which he never attempts to effectuate. And in *Price-Hollister Co.* v. *Warford Corporation* (18 F. [2d] 129)

the District Court of the United States for the Southern District of New York similarly declared that a " patentee has a right to protect his interest under the patent by notifying the world, or any person in particular, of his rights under his patent and cautioning against infringement; but he cannot, under this guise, harass and annoy competitors, or seek to destroy their trade. The law provides an orderly method of protecting the monopoly by suit."

Both these cases were founded upon a flagrant misinterpretation of the decree of the court in support of the patentee's alleged claim, and great and long-continued damage caused the plaintiffs after such announcement. In *Warren Featherbone Co.* v. *Landauer* (151 Fed. 130), on the other hand, the court refused to enjoin a party from circularizing the trade that he had commenced a suit for the infringement of a trade-mark, where such circulars had been sent in good faith. The parties seeking such injunction took the position that the trade-mark " Featherbone " was descriptive of the goods and not the exclusive property of the other claimant, and this is probably the position of the plaintiff in the case before us. And in *Hobbs Mfg. Co.* v. *Gooding* (113 Fed. 615, 616) a similar petition for relief against what was claimed to be an unwarrantable use of the opinion of the court was denied, the court saying: " The circular letter complained of sets out more than the court decided, but an examination of the opinion discloses no ambiguity or uncertainty as to what was decided; and, on the whole, we do not think the facts set out in the petition constitute a case of such wrongdoing as calls for our interference. At the most, it was an extravagant claim by a party as to the scope of the decision, based upon his interpretation of the opinion which this court had handed down."

I do not think the conduct of the defendant here has been quite so offensive as that of the defendants in the first two cases cited; nor are the exaggerations as to the scope of the decision in the Patent Office in its favor quite so marked. But in any event plaintiff has equally offended in this direction by notifying its trade, at the outset of the war of circulars, as follows: " Since the decision of the Patent Office, we have obtained a judgment in the Supreme Court against Aaron M. Shapiro adjudicating our exclusive right to this trade-mark, the judgment reading in part as follows   *   *   *."

The quoted extract from the judgment hardly bears out the extravagant claims of exclusive right. It is possible that a trial of the issues may disclose either that one or the other party has the exclusive right to the trade-mark, or that there has been such acquiescence or estoppel by either as to permit the other to

continue in its use. The possession of the registration by the defendant simply constitutes *prima facie* evidence that it is entitled to the mark. (*Phillips* v. *Hudnut*, 263 Fed. 643.) It is not conclusive or binding on the courts as to the right of a party to its exclusive use. (*Hennessy* v. *Braunschweiger & Co.*, 89 Fed. 664.) Since November, 1926, as already observed, plaintiff has made attempts to have defendant litigate the matter in the courts, but the latter seems to have hesitated to proceed. But plaintiff was equally at liberty to endeavor to define its rights either by an injunction to establish an exclusive claim or perhaps by seeking a declaratory judgment. This it has failed to do. The matter has now been brought to an issue. Suppose the defendant instead of the plaintiff had brought this action. Would the latter be justified in demanding a preliminary injunction against announcements to the trade of the pending litigation? Clearly not, under the authority of the *Featherbone* case, unless such announcements were grossly exaggerated or communicated in bad faith. The situation here in principle is more akin to that in *Hovey* v. *Rubber Tip Pencil Co.* (57 N. Y. 119, 125), where it was said: " If the defendant, believing itself to have an exclusive patent, issued such a notice in good faith as a warning to dealers against an invasion of its rights, it in so doing would only have discharged a moral obligation and satisfied the demands of fair dealing. In such a case a mistake on its part as to the validity of its right, would not have rendered it liable to an action."

In disposing of this application I am not unaware of the fact that defendant's claims have been quite exaggerated; at the same time plaintiff's conduct has not been entirely beyond criticism. In doing so I am expressing no opinion of the merits of the plaintiff's claim and prefer to relegate the parties to a full presentation of the facts upon the trial. On the other hand, I am not influenced by defendant's contention that plaintiff does not come into equity with clean hands, because some of its articles sold after the cancellation of its trade-mark contained the notation, " Registered Trade-Mark." Plaintiff has attempted to explain this as an inadvertence which was corrected long prior to the commencement of this action. Whether this is so remains to be seen. In any event, the matter at issue can be fully litigated at the trial upon the merits and the relative rights of the respective parties determined. Meanwhile, the court feels free to recommend that any doubt as to the propriety of disposing of the entire controversy can well be removed by appropriate amendment of the present pleadings.

The motion for a temporary injunction is denied.