TETLOW v. TAPPAN.

(Circuit Court, S. D. New York.    March 19, 1898.)

1. BASIS OF RIGHT TO TRADE-MARK—PRIORITY—USE—INVENTION.
    The exclusive right to the use of a trade-mark or device rests, not on invention, but on such use as makes it point out the origin of the claim-ant's goods, and must be early enough for that, but absolute priority, or invention, is not required.

2. SAME—PERMITTING USE BY ANOTHER—INFRINGEMENT.
    Where the long and successful use of a trade-mark or name by plaintiff is clearly established, the fact that he has recognized and permitted the limited use thereof by another, which does not appear to have misled any-body, is not sufficient to defeat the owner's right to prevent others from using it.

3. SAME—WHAT MAY BE APPROPRIATED.
    "Swan Down," as applied to a complexion powder, is not descriptive, so as to prevent its appropriation as a trade-mark therefor.

This was a suit in equity by Hentry Tetlow against Herman Tappan for alleged infringement of a trade mark or name.

Rowland Cox, for plaintiff.

Francis Eastlack, Jr., for defendant.

WHEELER, District Judge.    This suit is brought against giving currency in trade to complexion powder of the defendant by using the words "Swan Down" upon labels resembling those of the plaintiff, whereby the complexion powder of the defendant is made to appear to customers as that of the plaintiff.    The long and successful use of these words by the plaintiff upon labels and boxes of a popular com-plexion powder put up by him at Philadelphia is well made to appear and is not much questioned.    One Henry H. Burrington appears to have used these words upon a similar toilet preparation in a small way at Providence, a long time before, and till after, the plaintiff began using them, and to have copyrighted them.    Burrington brought suit against the plaintiff in the circuit court of the United States for the Eastern district of Pennsylvania for the use of these words, which was

settled, and assignment made by Burrington to the plaintiff of "all of the right, title, and interest, if any there be, which I have, or claim to have, in and to the use and employment of the words 'Swan Down,' as and for a name, title, designation, or trade-mark, for any preparation or article for the toilet, skin, or complexion, and the sole and exclusive right to use and employ the said words, name, or designation of 'Swan Down' for such preparation or article; saving and reserving, however, to myself and to Wm. H. Savournin, of the city of Philadelphia, respectively, the personal privilege and authority to use the same name or designation for the article now manufactured and sold by me and the said Savournin, respectively, by and under said name," for $550.　This use by Burrington, and recognition of it by the plaintiff, are relied upon by the defendant here to defeat any right which the plaintiff might otherwise have; and the defendant denies that his use of the words has any tendency to represent that his powder is the plaintiff's.

In Mill Co. v. Alcorn, 150 U. S. 460, 14 Sup. Ct. 151, Mr. Justice Jackson for the court said, in enumerating the requisites of a valid trade-mark, "that the exclusive right to the use of the mark or device claimed as a trade-mark or device is founded on priority of appropriation; that is to say, the claimant of the trade-mark must have been the first to use or employ the same on like articles of production." Much reliance is placed in behalf of the defendant upon this statement; and if it means absolute priority, like that required of an inventor in a patent under an absolute statute, it would stand squarely in the way of the plaintiff's right.　But a trade-mark rests on such use as makes it point out the origin of the plaintiff's goods, and not on invention; and the use must begin early enough, and be separate enough, for that. Use by another before, at the same place, or near enough to start a similar right, would prevent the use from showing such origin.　The other use might be so far away, or so small, as to have no effect upon the use in question, to prevent it from becoming a representation of origin.　In this case the use of the words by Burrington does not appear to have induced the plaintiff to adopt them, or to have been known to him, or to have led anybody to think that the plaintiff's goods, or the defendant's, were Burrington's, or to have done away with the effect of the use of the words by the defendant as a representation that his goods were of the same origin as the plaintiff's.　Such a use cannot justly affect the right of the plaintiff or the liability of the defendant.　The assignment had nothing to operate upon.　The reservations were personal, and have been exhausted, without anything material here having been done under them, and the transaction seems to be now wholly immaterial to this controversy.

A suggestion that the words are descriptive of quality of the article, rather than a designation of its origin, does not seem to be well founded. That the use of these words, with other configurations of labels similar to the plaintiff's upon boxes similar to his, as is shown and admitted to have been done by the defendant, would lead ordinary purchasers to think the article was of the same origin as the plaintiff's, is quite obvious.　There are differences which, if studied, might inform customers that the producers were not the same, but this is not sufficient to prevent the deceit.