BASS, RATCLIFF & GRETTON, Limited, v. CHRISTIAN FEIGENSPAN.

(Circuit Court, D. New Jersey. August 5, 1899.)

1. TRADE-MARK—INFRINGEMENT.
 The complainant's trade-mark for pale ale, consisting of an equilateral triangular figure, which as applied to bottled pale ale is colored red, is infringed by the defendant's mark as applied to pale ale and half-and-half, consisting of a combination of a red triangle nearly equilateral, a narrow gold border surrounding and binding it, a monogram composed of the letters C and F in the middle, and some fine scroll ornamentation in each corner.

2. SAME—EVIDENCE.
 Courts should not be astute to recognize in favor of a trade-mark infringer fine distinctions between different articles of merchandise of the same general nature, and should resolve against the wrongdoer any fair doubt whether the public may or may not be deceived through the application of the spurious symbol; and hence pale ale and half-and-half must, as against an infringer of a trade-mark for the former, be treated as malt liquors substantially similar to each other and belonging to the same class.

3. SAME—LIABILITY TO DECEIVE.
 No one who has counterfeited a legitimate trade-mark and applied the spurious symbol in competition with the genuine can avoid the charge of infringement by showing that the false mark has in practice been so accompanied, on labels, capsules or otherwise, by trade-names, designations, descriptions or other accessories, not forming part of it, as to render it unlikely that the public has been deceived. Such a showing, while it may affect the nature or measure of the relief to be granted, cannot defeat a suit for infringement.

4. SAME—INJUNCTION.
 He who applies the false mark has no just cause of complaint if he be prevented from further violating the exclusive right of the lawful employer of the genuine symbol, and he should not be allowed, at the peril of the latter, fraudulently to experiment in the use of such false mark with accessories of varying character with the double purpose of filching the custom of a business rival, and at the same time shielding himself from the consequences of infringement.

(Syllabus by the Court.)

In Equity.

Arthur Steuart, Rowland Cox, and Samuel D. Oliphant, Jr., for complainant.

Samuel Kalisch and Chauncy H. Beasley, for defendant.

BRADFORD, District Judge. The bill in this case charges infringement of a trade-mark and prays for an injunction and an account. The complainant is a corporation of Great Britain and is and has for a number of years been engaged in the business of brewing malt liquors at Burton-on-Trent, England. The business was founded by William Bass at that place in 1777, and has from that time

uninterruptedly been there carried on by him and his successors, including, among others, the firm of Bass & Company.    During all this period the ale brewed by him and them has continuously been known as "Bass ale" or "Bass."    The business has long been very extensive, its product reaching all parts of the civilized world.    For nearly fifty years Bass ale has been shipped for consumption in the United States in steadily increasing and in recent years in very large quantities.    Bass & Company and its successors have not bottled their ale, but have sold it only by the cask or otherwise in bulk. Liquor dealers to whom it is furnished either bottle and sell it, or sell it on draft or in bulk.    Many years before 1855 Bass & Company adopted and applied to casks of pale ale brewed by that firm an equilateral triangle as a trade-mark in connection with the sale of that product, and prior to such adoption and application no such figure or symbol had been appropriated to malt liquor.    Before 1855 the triangle as so applied to pale ale was red.    Afterwards it varied in color; being red, white or blue, as the case might be, to indicate the particular brew-house,—the complainant having three,— where the pale ale contained in the cask bearing it was made. The triangle thus selected as a trade-mark has continuously from the time of its adoption been applied by the complainant and its predecessors, by means of labels, stencilling or otherwise, to casks containing their pale ale.    In 1855 Bass & Company adopted a form of label bearing the triangular symbol in red to be applied to bottles containing Bass pale ale.    This label has with slight variation continued unaltered from the time of its adoption until now, and in its application to bottles of pale ale has uniformly borne a solid red equilateral triangle, the words "Trade Mark" being printed thereon parallel to its base.    The complainant has succeeded to the property and good-will of its predecessors, including Bass & Company, and to whatever exclusive right that firm had in the triangle as a trademark in connection with the sale of its pale ale.    It appears that the complainant has had an understanding or agreement with all bottlers, with the exception of only one bottling house, to whom it has sold its pale ale, that its labels bearing the red triangle should be affixed to all bottles containing such ale, and that they have been so affixed, unless, as has sometimes occurred, the complainant has permitted a bottling customer to affix to the bottles what is termed a caution label displaying a fac-simile of the capsule used by the bottler and containing a red triangle as its principal feature.    The complainant annually furnishes to the various bottling concerns with which it deals in the United States and elsewhere upwards of 200,-000,000 of its red triangle labels for application to the bottled product. The triangle, adopted in the first instance by Bass & Company, thus appears not only on casks of pale ale as sold by the complainant, but, with the exception above mentioned, on all bottled Bass pale ale. The complainant and its predecessors have also caused the red triangle to be applied to the bottled product by means of capsules and otherwise.    By signs, labels, cards and divers other advertising expedients, that symbol has for many years been constantly and con-

spicuously associated with their product, whether bottled or not, and with its origin. The complainant has produced evidence to the effect that its pale ale has for many years been to some extent called for or spoken of as "triangle ale." This evidence comes from persons connected with the complainant and living in England, and probably has reference solely to what may have transpired there. On the other hand there is evidence on the part of the defendant that Bass pale ale has not in this country been so called for or spoken of. But there can be little or no doubt, on the evidence as a whole, that a triangular figure, and especially a solid red triangle, as applied to pale ale or any substantially similar. malt liquor, amounts to a representation to the public, or a large portion of the public, that the liquor to which it has been applied is Bass pale ale, which has acquired such an enviable reputation for its excellence. The complainant procured the registration in the U. S. patent office July 23, 1889, as a trade-mark, being No. 16,851, for "beer of all descriptions," which it seems includes pale ale, of a "triangular figure with the words 'Trade Mark' at the base thereof." In the statement of trade-mark it is alleged that "the color is not essential and other colors may be substituted, and the triangle may be used in outline, if desired, without affecting the character of the trade-mark, the essential feature of which is the triangular figure." It is claimed on the part of the defendant that the registry of the mark must be treated as a nullity for the reason that it does not appear that the declaration of trade-mark was verified before a proper officer. This contention is immaterial, if the complainant was entitled to the exclusive use of the triangular symbol as a common-law trade-mark for pale ale of its production. That the complainant was so entitled I have no doubt. While Bass & Company and its successors have not sold their pale ale bottled, but only in bulk, and therefore, so far as bottled Bass pale ale is concerned, were not the owners of that product at the time they caused the triangle adopted by that firm to be applied thereto, this circumstance by no means negatives the existence of an exclusive right on the part of the complainant in or to the use of that symbol in connection with the sale of pale ale, although bottled. That symbol, having been applied by the complainant and its predecessors to their whole product of pale ale before sale by them, and having become associated in the public mind with it, enured to the benefit of the complainant with respect to all pale ale brewed by it, whether sold to consumers in bottles, casks or otherwise. Precisely the same considerations, which would sustain the complainant's trade-mark in its application to Bass pale ale before sale from the brewery or warehouse, would support it as applied by bottlers to the bottled product by virtue of an understanding or agreement with the complainant. In either case the complainant applies its trade-mark or causes it to be applied to its product for the purpose of protecting and extending its business. The use by others in either case of the complainant's trade-mark, or a mark bearing such close resemblance thereto that it may readily or reasonably be mistaken for it, in connection with the sale of pale ale or other malt liquor substantially similar to it, not brewed by the complainant, is

calculated to deceive and defraud the purchasing public, fraudulently to divert custom from the complainant and, perchance, by the palming off of an inferior ale, to injure the reputation enjoyed by the complainant on account of the excellence of its product. The complainant's trade-mark did not, and could not, include the totality of the contents of the labels or capsules used in connection with the sale of Bass pale ale. Such trade-names, designations or advertisements do not constitute a trade-mark. The trade-mark consisted solely of the triangular symbol; and there could be no reason for doubt by any intelligent person in this country, able to read the English language, as to what in fact was intended as the trade-mark, for upon or within the triangle, and not outside of it, were printed the words "Trade Mark."

Has or has not the defendant infringed that trade-mark? The defendant is a corporation of New Jersey and is and has for a number of years been engaged in carrying on in the city of Newark in that state the business of brewing, bottling and selling malt liquors, including pale ale and half-and-half; the latter being a mixture of pale ale and brown stout. It did not adopt the alleged infringing symbol and apply it to malt liquor until long after the complainant's trademark had been adopted and applied to pale ale, and had become well known to the public. The defendant procured the registration of its symbol in the U. S. patent office February 21, 1893, as a trade-mark for ale, being No. 22,498, specified as follows:

"The trade-mark consists of the following letters and arbitrary symbol, viz.: The letters 'C' and 'F' arranged in a monogram, in the center or field of a triangle. These have generally been arranged as shown in the accompanying drawing, which represents the fac-simile of the trade-mark of said corporation, said arrangement consisting of a triangle provided with an outer border and in the field of the triangle is arranged the monogram, consisting of the interwoven and fancy letters 'C' and 'F.' In use said letters are printed in gold on a red field in the triangle and the border of the triangle is also printed in gold, but said letters may be printed in black or in any other color, on a triangular field of any suitable color, and the outer band may be of any other color or may be entirely omitted, without materially affecting the character of the said trade-mark, the essential feature of which is the monogram of the letters 'C' and 'F' on a triangular field."

In point of fact the mark which the defendant has applied to its pale ale and half-and-half, and of which the bill complains, is the combination of a red triangle, a narrow gold border surrounding and binding it, a monogram consisting of the letters "C" and "F" in the middle, and some fine scroll ornamentation in each corner. The triangle used by the defendant is not equilateral like that of the complainant, but isosceles, its base being longer than either of its sides, but closely approximating to equality with them. In practice, while the words "Trade Mark" are printed on the triangle used by the complainant, those words respectively are on different sides of and do not touch the triangle used by the defendant for pale ale, but are printed on and are parallel to the base of the triangle used by the defendant for half-and-half. The two symbols and the words "Trade Mark" appearing in connection with them, subject to an alteration

96 F.—14

in the position of those words in the case of half-and-half as above stated, are as follows:

Complainant's Symbol.        Defendant's Symbol.

These two symbols, disassociated from all accessories on labels or capsules bearing them, resemble each other closely enough to be confusing, deceptive and misleading to the public, if both be applied to substantially similar malt liquors. The essential feature of the defendant's symbol is not the monogram, or gold border or scroll ornamentation. That feature is the triangle, or, as it has been applied, the red triangle, which also constitutes the complainant's symbol as employed in connection with the sale of bottled pale ale. There is nothing particularly unique or striking in the monogram, and, if there were, it might readily be supposed to represent, not that the malt liquor to which it is applied was the product of some person, firm or corporation other than the complainant, but merely the initials of the name of some bottler of or agent for Bass pale ale. Neither the gold border nor the scroll tracing is calculated to stamp itself upon the memory comparably with the triangle. Indeed, the defendant in its statement of trade-mark claims that the border "may be of any other color or may be entirely omitted, without materially affecting the character of the said trade-mark." When the symbols of the complainant and defendant are viewed side by side differences between them can, of course, be perceived, which may or may not be sufficient in their character to prevent confusion on the part of purchasers who have both symbols before them at the same time. But purchasers of pale ale do not as a rule have both symbols simultaneously before them for comparison. If they have come to associate a red triangle as applied to pale ale with Bass pale ale,—not necessarily with the name "Bass" in connection with pale ale, but with the superior malt liquor which Bass pale ale is,— and thereafter see the red triangle of the defendant's symbol applied to pale ale or substantially similar malt liquor, the complainant's symbol not being at the time before their eyes, may they not, in the exercise of only such degree of care as is usually observed by and reasonably to be expected from such purchasers, under varying conditions of knowledge, intelligence and nationality, be misled or deceived into the belief that in buying the malt liquor bearing the defendant's symbol they are getting Bass pale ale? Clearly they may; and, therefore, if the question of infringement is to be decided on consideration of the triangular symbols, disassociated from their accessories as contained on the labels and capsules displaying those symbols, there can be no doubt that the complainant's trademark has been infringed by the defendant. I am by no means satis-

fied that the defendant acted in good faith toward the complainant in adopting, using and procuring registration for its triangular symbol. On the contrary, the only inferences to be drawn from the testimony of Feigenspan, the president and principal stockholder of the defendant, strongly point to a deliberate intention on its part to filch the complainant's business by palming off on the public its own product as that of the complainant. The defendant, before the adoption of its triangle, knew of and was familiar with the complainant's trade-mark in red as applied to pale ale. It was at liberty to adopt and apply to its product any purely arbitrary symbol which had not theretofore been appropriated as a trade-mark for a similar product. Why should it under these circumstances, unless with wrongful intent toward the complainant, have adopted a red triangle? An explanation consistent with fair dealing on the part of the defendant is difficult, if not impossible. Certainly the president and secretary of the defendant, although pressed on this point in their examination, have utterly failed satisfactorily to account for the adoption by the defendant of the triangle as a trade-mark. To employ the language of Acheson, J., in Godillot v. Grocery Co., 71 Fed. 873, "there is no good reason for such a close imitation of the plaintiff's trade-mark, and no justification therefor." I cannot resist the conclusion that the defendant had an intent to infringe the complainant's trade-mark. If the defendant infringed that trade-mark by the sale of pale ale to which it had applied the triangle, it equally infringed that mark by the sale of half-and-half bearing the same symbol. The addition of brown stout to pale ale, resulting in half-and-half, does not, in my opinion, so differentiate that mixture from pale ale as to avoid the charge of infringement, if otherwise it would be sustained. Pale ale and half-and-half must, as against an infringer of a trade-mark for the former, be treated as malt liquors substantially similar to each other and belonging to the same class. Courts should not be astute to recognize in favor of an infringer fine distinctions between different articles of merchandise of the same general nature, and should resolve against the wrongdoer any fair doubt whether the public may or may not be deceived through the application of the spurious symbol. The defendant must be declared an infringer unless such effect is to be given to the form and contents of the labels and capsules respectively displaying the triangles of the parties as to produce a contrary result. It is unnecessary here particularly to refer to the capsules. The label customarily affixed to the complainant's pale ale sets forth in addition to the trade-mark the words: "This label is issued only by Bass, Ratcliff & Gretton, Limited. Bass & Co.'s Pale Ale. Bass & Co., Brewers, Burton-on-Trent." The label used by the defendant in connection with the sale of pale ale contains in addition to the triangular symbol the following: "Feigenspan's Finest India Pale Ale. Newark, N. J. Keep in cool place and standing upright at least 24 hours before opening." The defendant's label applied to half-and-half bears in addition to its symbol the following: "Feigenspan's Combination Half-and-Half. Brewery, Newark, New Jersey, U. S. A. The Combination Half & Half is a Choice Blending of

our Finest India Pale Ale & Brown Stout, made from Selected Malt & Hops." On each of the above labels the words "Trade Mark" appear on or in connection with the triangular symbol as heretofore stated. These three labels widely differ from each other in form, style of lettering, color, ornamentation and contents. Viewed side by side no one of them could be mistaken for either of the others. But it does not follow from what has been said that the defendant's labels might not be understood by illiterate or alien purchasers, seeing thereon the red triangle, to refer to Bass pale ale, and not to either the pale ale or the half-and-half of the defendant. With respect to the defendant's label for pale ale it may further be observed that, bearing the red triangle, there is nothing on it inconsistent with the idea that Feigenspan or the defendant might be a bottler of Bass pale ale, using that symbol by arrangement with the complainant. But aside from these considerations is the important fact that this is strictly a trade-mark case. The infringement of a trademark involves the violation by one person of an exclusive right of another to the use and benefit of a word, mark, symbol, &c., as the case may be, in connection with the sale of goods similar to those to which the same has been applied. This exclusive right is a vested right of property and cannot be invaded with impunity. No one who has counterfeited a legitimate trade-mark and applied the spurious symbol in competition with the genuine can avoid the charge of infringement by showing that the false mark has in practice been so accompanied, on labels, capsules or otherwise, by trade-names, designations, descriptions or other accessories, not forming part of it, as to render it unlikely that the public has been deceived. Such a showing, while it may affect the nature or measure of the relief to be granted, cannot defeat a suit for infringement. The lawful appropriator and employer of a trade-mark has an exclusive right of use and is entitled to be effectually secured in the full enjoyment of that right. If other persons are to be permitted to violate that exclusive right on the plea that the counterfeit symbol as applied in a given case has such accessories as to render deception of purchasers improbable or even impossible, an element of uncertainty and confusion will be introduced which cannot fail to encourage fraud and promote litigation. A sound public policy requires that the spurious trade-mark be suppressed, whether it is or is not for the time being accompanied by such accessories, not constituting part of it, as to avoid deception or render it unlikely. He who applies the false mark has no just cause of complaint if he be prevented from further violating the exclusive right of the lawful employer of the genuine symbol, and he certainly should not be allowed, at the peril of the latter, fraudulently to experiment in the use of such false mark with accessories of varying character with the double purpose of filching the custom of a business rival, and at the same time shielding himself from the consequences of infringement. Different considerations apply to cases involving those forms of unfair competition in trade where one person palms off his goods as those of another, not by means of violating any exclusive right of the latter possessed by virtue of a valid trade-mark, but by mere imitative devices

with respect to trade-dress, trade-names, &c., calculated to deceive the public. After careful examination of the evidence I am satisfied that the defendant has with wrongful and fraudulent intent to derive benefit from the reputation enjoyed by the complainant infringed the complainant's trade-mark by using the red triangle in connection with the sale of pale ale and half-and-half. Even were the words "Bass & Co.," contained on the complainant's label, to be treated as part of its trade-mark, as claimed by the defendant, the result would be the same; for the distinctive and dominating feature of the trade-mark would be the triangle. There has been no acquiescence by the complainant in the infringement of its trade-mark by the defendant and no such laches on the part of the former as to deprive it of the right to relief. The complainant is entitled to an injunction and an account. Let a decree be prepared accordingly.