WELSBACH LIGHT CO. v. ADAM et al.

(Circuit Court, W. D. New York. March 21, 1901.)

No. 112.

TRADE-MARKS—INFRINGEMENT—PRELIMINARY INJUNCTION.

    The registered trade-mark "Yusea" having been applied, under various pronunciations incidental to its use, such as "Why use a," and "Yuse a," etc., to the manufacture and sale of an incandescent gas mantle, but commonly pronounced by the trade in general in referring to the mantle as though spelt "You see a," the owner is entitled to a preliminary injunction against the use of the earlier conceived but subsequently registered trade-mark, "U-C-A," as applied to the manufacture and sale of a similar article; the intent with which the latter mark was used being immaterial, and its registration being only prima facie evidence of its validity.

In Equity. Motion for preliminary injunction against the use of a registered trade-mark.

John R. Bennett and John G. Milburn, for the motion.
Frederick Benjamin and Simon Fleischmann, opposed.

HAZEL, District Judge. This is an application for a preliminary injunction in a suit brought for infringement of complainant's registered trade-mark "Yusea." The infringing appellation consists of the registered hyphenated letters "U-C-A." Complainant's trade-mark was registered February 20, 1900; and the infringing trade-mark, October 23, 1900. Both trade-marks are appropriated to artificial lights, and the particular description of goods comprised in connection with the manufacture, sale, or use of incandescent lights. The phrase "Yusea" came into vogue about January, 1900, and was coined by complainant to attract the attention of the public because of its presumed peculiar combination of letters having no known meaning, but permitting a subtle unison of letters resulting in the conjunction of words. For example, when the expression "Yusea" is separated by hyphens it may represent several words, as "Why use a," or "Yuse a," or "Why you see a," or "You see a," or "You see." Complainant claims that because of the strangeness of the appellation, and the enunciation and signification attached thereto, its mantles have speedily become known to the public. The defend-

ants' mantles are inclosed in circular pasteboard packages. On the cover appear horizontally the letters and words "U-C-A Peerless Light if you use a U-C-A Peerless Mantle." On the side of the box, vertically, is printed "U-C-A Peerless Light." The pasteboard packages containing mantles of complainant's manufacture are circular, and marked vertically on the side with the imprint "Yusea Welsbach Mantle," and horizontally on the cover appear the words "Why-use-a Welsbach Mantle." Other similarities in the boxes are pointed out by complainant, and attempted to be differentiated by defendants. The general appearance of both boxes is substantially the same.

It was held in a suit for infringement of a registered trade-mark that the similarity or difference between labels, prints, and packages in which the goods are inclosed is not material. Judge Hawley said, in speaking for the circuit court of appeals of the Ninth circuit, in N. K. Fairbank Co. v. Luckel, King & Cake Soap Co., 42 C. C. A. 376, 102 Fed. 327:

"The law is well settled that in suits of this character the intention of the respondent in adopting the style of package, or choosing a name for a similar product, is to a certain extent immaterial. It is not essential to the right of a complainant to an injunction to show absolute fraud or willful intent on the part of the respondent. * * * If the acts of the respondent in the adoption of the name 'Gold Drop' constitute an infringement of the trade-mark or trade-name of the complainant, and it was put on the market in such a manner as to interfere with the legal rights of complainant to its loss and injury, it would be entitled to an injunction, irrespective of the question of any testimony as to actual fraud or willful intent. * * * There are many cases where respondent's packages and labels are to the eye so distinctive and unlike the packages of the complainant as not to deceive the purchasers, exercising ordinary care, who are accustomed to the size of the packages and the general characteristics of the label. But how about the stranger who knows nothing about the packages or of the labels, but has read the advertisement and remembers the name 'Gold Dust'?"

If the use of the letters "U-C-A," as applied to the manufacture and sale of mantles for incandescent lights, deceives persons of ordinary intelligence, so that in the purchase of mantles so labeled and inclosed in packages the purchaser, buying with usual care, in the mistaken belief that he was purchasing complainant's mantles, purchases those of the Peerless Light Company, the prayer of the bill should be granted. Manufacturing Co. v. Read (C. C.) 47 Fed. 712; Sterling Remedy Co. v. Eureka Chemical & Mfg. Co., 25 C. C. A. 314, 80 Fed. 105.

Defendants claim that the trade-mark under which Peerless mantles are sold was conceived in December, 1899, prior to the conception of complainant's trade-mark. No application was made for registration until September, 1900. The manufacture and sale of these goods were commenced, and the letters complained of were used in the sale thereof, by the Peerless Light Company, in June or July, 1900,—six months after complainant had expended a large sum of money in advertising its trade-mark "Yusea," and subsequently to the time that complainant's goods had become popularly known. The arbitrary combination of letters "Yusea" having been in prior use, and extensively recognized as a method of identifica-

tion of the mantle manufactured and sold, complainant is entitled to its use in the commonly accepted sound and signification which might result from its adoption. Earlier conception of the letters "U-C-A," under which defendants sold similar goods without actual fraudulent intent, cannot be permitted to disturb the trade-mark rights previously obtained by the complainant. Mill Co. v. Alcorn, 150 U. S. 461, 14 Sup. Ct. 151, 37 L. Ed. 1144; Tetlow v. Tappan (C. C.) 85 Fed. 775; American Washboard Co. v. Saginaw Mfg. Co., 43 C. C. A. 233, 103 Fed. 281. The subsequent adoption of three letters, meaningless in themselves, but resulting in a sound and signification identical with complainant's trade-mark, will not avoid infringement.

The controlling contention in this action is whether the complainant, having a prior and exclusive right to the designation "Yusea," has thereby also obtained an exclusive right to the use of the various pronunciations and the complex words or syllabic formations to which this particular word is susceptible. A moment's reflection reveals the various pronunciations and composite words to which "Yusea" may be adapted. A trade-mark which is variously pronounced and distorted to suit the purposes of trade and the fancies of the manufacturer in his endeavor to catch the public eye may yet be protected, within the fair and reasonable scope of a trade-mark, however artfully it may be conceived. It appears from the affidavits of complainant's manager and advertising agent, the person who conceived the word, that the common pronunciation by the trade in general is as if it were spelt "You see a," and that the mantles manufactured by complainant are commonly known as "You-see-a mantles." This is accentuated by the ordinary pronunciations that follow a casual observation of this complex word. The unique alterations in the pronunciations of the word must, I think, be regarded as incidental to its use. This perhaps enhances its value as an advertising medium. They do not change the registered designation, and the word "Yusea" remains the dominating word in the trade-mark. In the case of Thomas G. Plant Co. v. May Co. (C. C. A.) 105 Fed. 377, where the word "Quality" was added to the designation "Queen," and where the goods sold were recognized under both designations, "Queen" and "Queen Quality," and were so known to the trade and by purchasers, the court said:

"We do not think, however, that this addition materially changed the designation. The added word did not obscure the origin. This is shown by the fact that the product continued to be known as 'Queen shoes,' and was designated by that name by the trade and by the public, and the word 'Queen' was still the dominating word in the trade-mark. There are many cases where it has been held that an addition of other words by an infringer did not destroy the identity of a trade mark or name, and relieve him from the consequences of infringement, so long as the designation effected the practical purpose of denoting that the goods were those of another. By a parity of reasoning, it must follow that, so long as the owner of a trade-mark keeps up the substantial identity thereof, he is entitled to protection."

I am aware that in the case of Albany Perforated Wrapping-Paper Co. v. John Hoberg Co. (C. C.) 102 Fed. 157, the question suggested by the bill and the evidence was whether the manufacturer of a

single article had the right to use, and to be protected in the use of, more than one trade-mark for that article. The court said:

"I find little authority upon the subject, and have given the question much consideration. Upon principle, I think that he cannot. * * * A trade-mark must denote origin. How can that purpose be accomplished if a manufacturer dealing in a single article used a thousand different trade-marks to designate the article and its origin? Such use necessarily produces confusion, and fails of the single purpose of the trade-mark,—to designate with certainty the origin of the product."

But in the case at bar the trade-mark adopted and used by complainant in order to designate the goods it manufactures or sells has not lost its origin. The trade-mark, because of its variable sound and pronunciation, became more prominently known to the public, and thereby served the purpose for which it was conceived; i. e. to attract the attention of the public to the original conception.

It was urged by counsel for defendants on argument that registration of a trade-mark carried with it a presumption of noninfringement, so strong as to preclude a preliminary injunction. The act of congress makes the registration of a trade-mark only prima facie evidence of ownership. In Manufacturing Co. v. Ludeling (C. C.) 22 Fed. 823,—a case where it was claimed that the certificate of registration of the commissioner of patents is a decision entitling the person obtaining the trade-mark to the use of it, and as conclusive between the parties, Judge Wallace said:

"The registration could not confer a title to the trade-mark upon the complainant if some other corporation or individual had acquired a prior right by adoption and use, nor could it vest the defendant with the title as against the complainant's common-law title. In this view, the only office of the registration is to confer jurisdiction upon the court to protect a trade-mark when the proprietor has obtained the statutory evidence of title, and the only function of the commissioner of patents is to determine whether the applicant has a presumptive right to the trade-mark."

The facts of this case come, I think, within the rule of Biscuit Co. v. Baker (C. C.) 95 Fed. 135, and cases here cited, and are established sufficiently clearly and satisfactorily to authorize an injunction pendente lite restraining the defendants from using as a trade-mark the letters "U-C-A," as applied to the sale or offering for sale of incandescent gas mantles. Let an injunction issue accordingly.