WALTER BAKER & CO., Limited, v. DELAPENHA et al.

(Circuit Court, D. New Jersey. April 13, 1908.)

1. TRADE-MARKS AND TRADE-NAMES—RIGHT TO TRADE-MARK—USER.

A manufacturer can acquire the right to a trade-mark only by its use on goods sold.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trade-Marks and Trade-Names, § 31.]

2. SAME—FOREIGN TRADE-MARK—NECESSITY OF USE IN UNITED STATES.

A foreigner can acquire the right to a common-law trade-mark in the United States only by its use on goods sold in this country.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trade-Marks and Trade-Names, § 34.]

3. SAME—LENGTH OF USE.

The right to a trade-mark does not depend upon any particular period of user, but once it is adopted in good faith and used, the right thereto inures, and will prevail against any subsequent user.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trade-Marks and Trade-Names, § 31.]

4. SAME—INFRINGEMENT—ISSUES IN SUIT FOR INFRINGEMENT.

In a technical trade-mark case, questions of deception, confusion, or injury are unimportant.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trade-Marks and Trade-Names, § 75.]

5. SAME—TRADE-MARK FOR CHOCOLATE.

Complainant's registered trade-marks of the word "Auto" and a picture of a motor car, both for use on packages of chocolate, *held* infringed by defendants by the use of both the word and a picture of an automobile on packages of imported chocolate of similar kind, although of somewhat different style and coloring, and although the design was registered as a trade-mark in Switzerland before its use by complainant, where it was not until afterward used on goods sold in this country.

In Equity. On final hearing.

Archibald Cox and Putnam & Putnam, for complainant.

Carrick & Wortendyke, for defendants.

CROSS, District Judge. This is strictly a trade-mark case, and presents no element of unfair competition in trade. The complainant is a well-known manufacturer of chocolate, doing business at Boston, Mass., and is the owner of two common-law trade-marks registered under the act of Congress of February 20, 1905, c. 592, 33 Stat. 724 (U. S. Comp. St. Supp. 1907, p. 1008). One of the trade-marks consists of the word "Auto" and is registered as No. 44,405; the other consists of the representation of a "motor car" and is registered as No. 45,580. The application for the former was filed April 3, 1905, and it was registered July 4, 1905; the application for the latter was filed April 14, 1905, and it was registered August 22, 1905. An application was originally filed February 17, 1905, under the trade-mark act of 1881, which embraced both the picture and the word "Auto," but when the trade-mark act of 1905 took effect, as it did on the 1st of April of that year, an amended application was filed under the new act which embraced only the representation of an automobile and another application was filed April 3, 1905, for the word "Auto." The president of the complainant corporation testifies that he conceived the idea of these trade-marks for use upon the wrappers of small packages of sweet chocolate for eating purposes, in the fall of 1904; that the design of an automobile, for use as a trade-mark, was suggested to him while looking over magazines containing advertisements of those vehicles, and that from such advertisements he selected one which he regarded as the prettiest and most suitable in size for the purpose, and having changed the color from black to red, had a cartoon prepared which showed the picture of an automobile and the word "Auto" on it, for use upon wrappers containing the article above mentioned. Packages of chocolate thus wrapped were sold in large quantities in the course of trade to customers in the various states of the United States, and in foreign countries, beginning in the month of December, 1904, and thereafter continually to the present time. The president of the complainant company also testifies that, at the time he adopted the above trade-marks, he did not know of their use by anybody in this country or elsewhere, upon similar or like preparations, and that so far as he knew their use by the complainant in that connection was absolutely novel. The bill of complaint in this cause is filed to enjoin the defendants, who do business in New York as agents of foreign importers, from selling in the United States chocolate manufactured by Société Anonyme,

J. Klaus of Locle, Switzerland, bearing trade-marks infringing the complainant's. The packages of chocolate manufactured abroad and sold by the defendants, bear upon the wrapper the word "Auto" and also a design of an automobile, which word and design it appears were registered by the foreign manufacturers in Switzerland, in September, 1903, but it does not distinctly appear that the trade-marks so registered were placed upon any goods actually sold in Switzerland. It does appear, however, that a company known as the Canadian Swiss Trading Company, imported the Klaus Auto-Noisettes into the Dominion of Canada a few months before they were imported into the United States by the defendants, but whether or not they were imported for sale, or any were sold, is not disclosed. There is no positive proof to show that the foreign trade-marks were ever placed upon any goods which were actually sold anywhere prior to those which came into the hands of the defendants, about the 1st of March, 1905, which was several months after the complainant had adopted and used its trade-marks, and several days after it had filed its original application for their registration. Upon this point counsel for the complainant in their brief well say, "A manufacturer does not acquire a trade-mark by sending goods bearing it to his agents and by the agents sending it to subagents, as from its nature a trade-mark must be used on goods sold." Section 16 of the trade-mark act of 1905, constitutes registration prima facie evidence of ownership, and thereby imposes upon the defendants the burden of disproving such ownership. This burden they have not sustained. The most that has been conclusively shown is foreign registration, but this did not confer title, certainly not in the absence of user. But granting that an inference of prior use in a foreign country may be drawn from the testimony, the fact still remains that there is no evidence whatever from which even an inference can be drawn of any use or sale in the United States of any goods on which the foreign trade-marks appeared, until some time after the complainant had, in good faith, adopted and used its trade-marks in question, and upon this foundation, if no other, I think the complainant's case can be rested. The following rule is laid down in Hopkins on Trade-Marks, p. 62:

"A foreigner has no common-law right to a trade-mark in the United States as against a citizen who had adopted a similar mark in good faith before the alien has sold any goods in this country."

A footnote shows that this doctrine is rested upon the authority of Richter v. Anchor Remedy Company (C. C.) 52 Fed. 455, where Judge Acheson of this circuit, at page 458, says:

"As we have seen, prior to his first registration, the plaintiff had never sold in the United States any of his medicines. Nor had he himself made any importations thereof before that registration. Having then no trade in this country we do not see how the plaintiff could well have here a common-law trade-mark."

See, also, Richter v. Reynolds et al., 59 Fed. 577, 8 C. C. A. 220; Eiseman v. Schiffer et al. (C. C.) 157 Fed. 473, 475.

Nor does the fact that the complainant adopted and used its trade-marks but a short time before the defendants imported and sold goods

bearing like trade-marks, alter the situation. The complainant's rights accrued as soon as it had put goods upon the market bearing its trade-marks. Priority of use rather than priority of invention confers the right. The right to use does not depend upon any particular period of user; once a trade-mark is adopted in good faith and used, the right thereto inures and will prevail against any subsequent user. As was said in Columbia Mill Co. v. Alcorn, 150 U. S. 460, 463, 14 Sup. Ct. 151, 152, 37 L. Ed. 1144, "the exclusive right to the use of the mark or device claimed as a trade-mark is founded on priority of appropriation; that is to say, the claimant of the trade-marks must have been the first to use or employ the same on like articles of production." The point under consideration is considered somewhat at length in Kathreiner's Malzkaffee Fab. v. Pastor Kneipp Med. Co., 82 Fed. 321, 27 C. C. A. 351, where the Circuit Court of Appeals for the Seventh Circuit at page 326 of 82 Fed., page 356 of 27 C. C. A., says:

"It is enough, we think, if the article with the adopted brand upon it is actually a vendible article in the market, with intent by the proprietor to continue its production and sale. It is not essential that its use had been long continued, or that the article should be widely known, or should have attained great reputation. The wrong done by piracy of the trade-mark is the same in such case as in that of an article of high and general reputation, and of long-continued use. The difference is but one of degree, and in the quantum of injury. A proprietor is entitled to protection from the time of commencing the use of the trade-mark."

See, also, Tetlow v. Tappan (C. C.) 85 Fed. 774; Welsbach Light Co. v. Adam (C. C.) 107 Fed. 463; and McAndrew v. Bassett, 4 De Gex, J. & S. 380, 384.

It is further insisted upon the part of the defendants, however, that the device and wording of the defendants' wrapper do not so closely resemble the device and wording of the complainant's as to be capable of being properly described as a colorable imitation; the point apparently being that the defendants' packages do not resemble the complainant's to a misleading degree. Upon both nevertheless, the word "Auto" appears, although in different type, and also the picture of an automobile, which is likewise somewhat dissimilar—that is, the defendants' picture represents an automobile commonly known as a "runabout," while the complainant's represents a two-seated vehicle generally known as a "touring-car." Furthermore, speaking generally, the packages, as packages having wrappers of different colors, are dissimilar in appearance. But when we take into consideration the distinguishing marks in question, and it is with them that we mainly have to deal, they do, notwithstanding the difference noted, closely imitate each other; they represent the same idea or conception. In suits of this character, slight differences in the trade-marks and differences in the appearance of packages and the prices at which they are sold, are not controlling, but on the contrary are comparatively immaterial. In a technical trade-mark case, question of deception, confusion, or injury are unimportant. This rule was substantially laid down by the Circuit Court of Appeals for the Second Circuit in Gannert v. Rupert, 127 Fed. 962, the court saying at page 964, 62 C. C. A. 594, at page 596:

"It is of no moment that the proof fails to show deception, confusion, or injury to any marked extent. Such proof is unnecessary where infringement of a valid trade-mark is clearly established."

Again, in Bass et al. v. Feigenspan (C. C.) 96 Fed. 206, at page 212, the court says:

"No one who has counterfeited a legitimate trade-mark and applied the spurious symbol in competition with the genuine can avoid the charge of infringement by showing that the false mark has in practice been so accompanied on labels, capsules or otherwise, by trade-names, designations, descriptions or other accessories, not forming part of it, as to render it unlikely that the public has been deceived."

So, also, in Walter Baker & Co., Limited, v. Puritan Pure Food Co. (C. C.) 139 Fed. 680, the court, quoting from Bass et al. v. Feigenspan, at page 682, says:

"The lawful appropriator and employer of a trade-mark has an exclusive right of use, and is entitled to be effectually secured in the full enjoyment of that right. If other persons are to be permitted to violate that exclusive right on the plea that the counterfeit symbol, as applied in a given case, has such accessories as to render deception of purchasers improbable, or even impossible, an element of uncertainty and confusion will be introduced, which cannot fail to encourage fraud and promote litigation. A sound public policy requires that the spurious trade-mark be suppressed, whether it is or is not for the time being accompanied, by such accessories, not constituting part of it, as to avoid deception or render it unlikely."

Among dealers and users of packages of chocolate, I think that the picture of an automobile accompanied by the word "Auto" would carry far more weight than the color of the packages, the names of the manufacturers or other advertising matter appearing thereon. Trade-marks in such cases are usually well remembered, easily recognizable and at once catch the eye and fix the attention well-nigh to the exclusion of everything else.

Again it was urged, but not strongly, that the defendants' goods are not of the same descriptive properties as the complainant's. The complainant's registrations cover chocolate in all its forms, although up to this time their registered marks have not been used upon any other preparation than "Auto Sweet Chocolate" made of cocoa beans, roasted, ground and mixed with sugar. The defendants' "Auto-Noisettes" are made of cocoa beans, roasted and ground and mixed with a percentage of sugar, extract of vanilla and ground filberts. Both are put up in small attractive packages, adapted to be carried in the hand or pocket. The complainant's product is described upon the label as "Sweet Chocolate" the defendants' "Chocolate Surfin pour Croquer," and as "Chocolat Auto-Noisettes." The descriptions on the packages and also the testimony of the witnessess make it apparent that both preparations are adapted to meet the same class of trade; that they are substantially alike and are so regarded by consumers. Language which would describe one would appropriately describe the other. They are chocolates intended to be eaten in the form in which they are sold. I cannot therefore but regard the products of the complainant and defendants as having substantially the same descriptive properties. In the Collins Co. v. Oliver Ames & Sons (C. C.) 18 Fed. 561, the defendant was enjoined from using on shovels the plaintiff's trade-

mark for edge-tools. In Church & Dwight Co. v. Russ et al. (C. C.) 99 Fed. 276, the defendants were enjoined from using on packages of baking powder the plaintiff's trade-mark for baking soda and saleratus. In Bass et al. v. Feigenspan, supra, the defendants were enjoined from using on half and half the plaintiffs' trade-mark for ale, and in Enoch Morgan's Sons Co. v. Ward, 152 Fed. 690, 81 C. C. A. 616, the complainants who used the trade-mark "Sapolio" upon a scouring soap in a cake form, asked for an injunction against the defendants prohibiting them from using the word "Sopono" as a trade-mark for washing powder. The injunction was allowed, the court saying at page 693 of 152 Fed., page 619 of 81 C. C. A., "the fact that sapolio is a cake and sopono a powder is of no moment. The appeal is made to the same class of customers who use the respective articles for the same general purpose." Other similar cases might be cited, but it seems unnecessary. In conclusion, I think the complainant has established its rights to the trade-marks in question; that the defendants have infringed them, and that an injunction should issue to restrain such infringement, pursuant to the prayer of the bill of complaint.

The complainant is entitled to costs.