## WALLACE & CO. v. REPETTI, Inc. *

(Circuit Court of Appeals, Second Circuit.   May 12, 1920.)

No. 212.

1. **Trade-marks and trade-names ☞21, 28—Right to trade-mark not dependent on length of use.**

    The right to the exclusive use of a trade-mark does not depend on any particular period of usage; but, having been adopted in good faith, the right thereto inures and will prevail against any subsequent user.

2. **Trade-marks and trade-names ☞32—Abandonment must be intentional to forfeit rights.**

    To establish abandonment of a trade-mark as a defense, it is essential to show, not only acts indicating a practical abandonment, but an intent to abandon.

3. **Trade-marks and trade-names ☞32—Permitting use by another of somewhat similar device not abandonment.**

    Where a registered trade-mark for candy boxes consisted of the name "Blue Bird" and the picture of a blue bird, printed in blue ink, permission to another manufacturer to use an art box decorated with a hand-painted, highly colored, picture of two blue birds flying, without advertising or using the name "Blue Bird," held not an abandonment of the trade-mark.

4. **Trade-marks and trade-names ☞98—Willful infringer liable for accounting.**

    Where defendant continued to clearly infringe a trade-mark after warning and with full knowledge of complainant's rights, complainant held entitled to an accounting.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by Wallace & Co. against Repetti, Incorporated. Decree for complainant, and defendant appeals.   Affirmed.

Harry D. Nims, of New York City, for appellant.
Mock & Blum, of New York City, for appellee.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge.   On January 14, 1913, the appellee was granted the registration of the name "Blue Bird" and the figure of a blue bird as a trade-mark for a candy box.   The evidence indicates that this mark for the appellee's goods was used from September, 1912. The District Court granted the appellee an injunction restraining the appellant from using the blue bird mark and also for an accounting.   A comparison of the appellee's box and that of the appellant shows the large figure of a blue bird in the upper left-hand corner of each box, above the phrase "Blue Bird for Happiness."   In the appellee's box the figure of the blue bird is directly above the phrase, while in the appellant's box it is above, but not directly above.   The printing on both boxes is in blue ink, and blue ribbon tied in substantially the same way.   In each case the box contains an equal weight of candy.

The appellee contends that it has the sole right to the use of this trade-mark, not only by reason of the registration, but by such use as to invoke in its aid a common-law right to maintain this action against

the appellant for unfair competition. Thus the appellee has contended that it has used the trade-mark since its registration, and, indeed, before that date, giving no one else the right so to use, except the limited right which was granted to Whitman & Son, Incorporated, to the use of a hand-painted picture of two blue birds solely as a decorative feature, and not as a trade-mark. The District Court found that such use by Whitman & Son, Incorporated, was in a practically non-competitive line. The only other use of the blue bird on candy boxes appears to be that in the case of Spoehr, who manufactured candy and used the blue bird mark in the state of Illinois. When the appellant started to infringe, in 1916, it was warned against continuation of such infringement, and some correspondence then took place between the parties, and it was only after there was a protest by Whitman that this action was commenced.

The questions here presented are: (1) Has the appellee, by granting permission to Whitman & Son, Incorporated, under the terms and conditions, lost its property in the trade-mark? and (2) has the use of the trade-mark in the business of the appellee been protected by the use of it as such trade-mark, or has its business and method of carrying on the same been such as to lose the trade-mark right, because of the small number of sales by it? and (3) can it be said that because of the, infringement of Spoehr, of Illinois, the trade-mark has been appropriated by such infringement, and the appellee lost its property rights therein?

[1] The evidence indicates that appellee's business was established in 1870. It never had a large or extended business. It has done little or no advertising; but it adopted this trade-mark and registered it, and its sales have been continuous throughout the country. It has always featured the blue bird brand as one of its brands upon its price lists as published. It appears that some 2,500 or 3,000 of these price lists were printed each year and sent to regular patrons and those who made inquiries. Its candies with this box, containing the trade-mark, were continuously on sale at its stores in New York City. Under this proof, we are satisfied that the trade-mark belong to the appellee after its registration, and its property rights continued therein undiminished or unabridged. The appellee's rights accrued as soon as it put goods on the market bearing this trade-mark. Its use was prior to that of other manufacturers who attempted to use it. The right to use does not depend upon any particular period of usage. This trade-mark having been adopted in good faith, the right thereto inures and will prevail against any subsequent user. Kathreiner's Maltzkaffee v. Pastor Kneipp Medical Co., 82 Fed. 321, 27 C. C. A. 351; Walter Baker & Co. v. Delapenha (C. C.) 160 Fed. 746.

[2] In order that an abandonment may be established as a defense, it is essential to show, not only acts indicating practical abandonment, but an intent to abandon. Thus, where the appearances may be sufficient to indicate an abandonment, this may be satisfactorily explained by showing a want of intention to relinquish the right claimed. Saxlehner v. Eisner & Mendelson Co., 179 U. S. 19, 21 Sup. Ct. 7, 45 L. Ed. 60. There is no penalty which inflicts the loss of right of

property in trade-marks by nonusage, unless there also be found an intent to abandon. Of course, intent may be inferred from the facts shown; but the facts must be adequate to support a finding of abandonment. To give up for a long period and to discontinue the use of the trade-mark "Blue Bird," and permit others to use it indiscriminately without prosecution, would amount to an abandonment. Baglin v. Cusenier Co., 221 U. S. 580, 31 Sup. Ct. 669, 55 L. Ed. 863.

[3] But the evidence here is insufficient to make out a case of abandonment, and, indeed, we think it is sufficient to establish the claim of the appellee that, within the scope and extent of its business, the appellee exercised its property right in the trade-mark sufficiently often. It appears that prior to Easter, 1916, Whitman & Son, Incorporated, of Philadelphia, well established candy manufacturers, adopted the name "Blue Bird" and put it on boxes bearing one or more blue birds. They used the words "Blue Birds." In 1916, the appellee warned against such continued use, and in response thereto, on June 9, 1916, Whitman & Son, Incorporated, protested against the claim of willful infringement. The appellee exonerated Whitman & Son, Incorporated, from willful infringement, and granted permission to continue the sale of this box upon condition that they continue to use two blue birds, and provided the box of candy was not advertised as the "Blue Bird brand" or the "Blue Bird box." The blue birds then used by Whitman & Son, Incorporated, consisted of two fanciful and artistically colored blue birds flying against the sky. It was a hand-painted box, and Whitman & Son, Incorporated, contended that they were known as art packages. No lettering of any kind was used, nor was any representation of the blue bird used in advertising matter. In June, 1916, Whitman & Son, Incorporated, wrote:

"We assure you that we intend to respect all of the rights of our good friends, Messrs. Wallace & Co., and we believe that you will have no cause for complaint as to the method used in the future in marketing this hand-painted package."

All the advertising by Whitman & Son, Incorporated, with the use of the figure of the blue bird, did not have any effect upon the ultimate consumer, as it appears that it was not identified by the consumer as the Blue Bird brand, nor was it ever called for or identified as such brand. In addition to the benefit accorded the owner of the trade-mark, it is the purpose of the trade-mark law to confer a benefit upon the ultimate consumer. Cuervo v. Owl Cigar Co. (C. C.) 68 Fed. 541. We think that the disposition of the controversy between the appellee and Whitman & Son, Incorporated, is not evidence of an abandonment of the trade-mark or a dedication of it to public use. Saxlehner v. Eisner & Mendelson Co., 179 U. S. 19, 21 Sup. Ct. 7, 45 L. Ed. 60; McLean v. Fleming, 96 U. S. 245, 24 L. Ed. 828.

The testimony indicating a use of the blue bird trade-mark by Spoehr is that of Conrad Spoehr. He testified that he did use the blue bird upon candy boxes in sales which he made in Illinois. It appears that he sold only at retail in Chicago. When the appellee heard of this, it duly informed Spoehr to desist. This incident cannot be said to

constitute such laches on the part of the appellee as to bar the right to maintain this action. To be sure, it was the duty of the appellee to enforce such right against those whom it knew, or of whom it had notice, were infringing. It cannot be chargeable with laches for failure to prosecute an infringement before it knows or has such notice as would lead an ordinarily prudent person to inquire and learn the existence of the infringement. Kilbourn v. Sunderland, 130 U. S. 505, 9 Sup. Ct. 594, 32 L. Ed. 1005. The use by Spoehr was five months after the appellee adopted the blue bird. It appears that the appellant infringed without knowledge of Spoehr's infringement. There was not such delay on the part of the appellee as would support the defense of laches. Delaying the commencement of the action from the date of infringement to the date of the commencement of the action is not such delay as would prevent the restraint of future infringement. Aunt Jemima Mills Co. v. Rigney & Co., 247 Fed. 407, 159 C. C. A. 461, L. R. A. 1918C, 1039. There are no such unusual circumstances here which would warrant supporting the defense of laches.

[4] The acts of the appellant here were indulged in, not only before, but after, full warning and with knowledge of the appellee's rights and its intentions. The appellant did not at any time modify its business conduct, but continued to infringe; and this was without the acquiescence or consent of the appellee. We think that under these circumstances the appellee was entitled to an accounting. Garrett & Co. v. Schmidt, etc., Co. (D. C.) 256 Fed. 943; Layton Pure Food Co. v. Church & Dwight Co., 182 Fed. 35, 104 C. C. A. 475, 32 L. R. A. (N. S.) 274.

The burden of proof was upon the appellant to show by evidence that extraordinary circumstances exist which require the application of the doctrine of laches. This burden it has not sustained.

Decree affirmed.