**MENDES v. NEW ENGLAND DUPLI-CATING CO.**

Civ. A. No. 50311.

United States District Court
D. Massachusetts.

Dec. 14, 1950.

Herbert A. Baker, Daniel J. Daley, Boston, Mass., for plaintiff.

Ezekiel Wolf, Boston, Mass., for defendant.

SWEENEY, Chief Judge.

In this action the plaintiff seeks an injunction against an alleged infringement of a registered trade-mark, and an accounting of profits. The defendant denies infringement and, in a counterclaim, seeks to have the plaintiff enjoined from an alleged intimidation of his customers, and a declaration that the plaintiff's trade-mark No. 521,- 322, issued on February 21, 1950, be declared invalid.

### Findings of fact

Mendes, the plaintiff herein, invented a collating and tipping machine in 1939, and sometime thereafter called it a PADDY machine, this name being adapted from a nickname for one of his daughters. He did some advertising of this machine in a leading trade periodical. At first he did business as an individual under the name of Paddy Machine Company, but later had this Company incorporated and it became the Paddy Machine Company, Inc. Prior to 1943 the Company had sold and shipped from Boston two machines bearing the label PADDY, one to Canada and one to Cininnati, Ohio. The war stopped production of his machines. In 1947 Mendes recommenced the manufacture and sale of collating machines under the name of J. Curry Mendes, and with one exception the machines were labelled as either "Mendes" or "JCM". The name PADDY, although still used in his correspondence, was being reserved by him for an improved collating machine which he intended to produce, while "Mendes" and "JCM" served as broader terms to designate all of his products. In order to secure exclusive rights to the use of the PADDY mark, Mendes, on advice of his attorney, shipped two collating machines bearing the PADDY mark from Boston to New York, one on May 31, 1949, to his sales office, and another on July 14, 1949, to a purchaser in New York. On June 29, 1949, the plaintiff, citing his May 31 shipment as the first use in commerce of the PADDY trade-mark and asserting on belief his ownership of the mark, filed application for the trade-mark registration, which issued on February 21, 1950.

Shortly thereafter Mendes learned that the defendant was using the name PADDY in certain advertisements in trade periodicals. The defendant had, in fact, been employing this name in correspondence and circulars since the latter part of 1948. The plaintiff then removed the trade-mark PADDY from the two machines which had been shipped to New York and stopped ap-

plying the mark until such time as it could be demonstrated by legal decision that he was the owner of this mark, and that his registration was in fact good.

In 1948 the defendant, New England Duplicating Co., entered an agreement with one Herbits by which the defendant was to sell and advertise under the PADDY label collating machines produced by Herbits. The latter purported to have the right to use the PADDY name by virtue of a chattel mortgage executed by that company on all its assets and good will. Use of the mark by Herbits, by the Graphic Machine Corporation which he formed in 1949, and by the defendant has been confined to advertisements, correspondence, circulars, and trade magazines.

### Discussion

■ The law governing the issues in this case is the federal law. It was decided by this Court that issues arising under the head of infringement of a federally registered trade-mark are governed by federal rather than by state law. See Bulova Watch Co. v. Stolzberg, D.C., 69 F.Supp. 543, and Dwinell-Wright Co. v. National Fruit Product Co., 1 Cir., 140 F.2d 618. The present trade-mark statute known as the Lanham Act, 15 U.S.C.A. §§ 1051–1127, does not appear to deal specifically with this conflicts question, but both the Act itself in 15 U.S.C.A. § 1127, and the Senate Committee Report on the Act, 1946, U.S.Code Cong.Serv., pp. 1276, 1277, manifest an intent to regulate trademarks used in interstate commerce along uniform national lines, thereby avoiding the chaotic interference of diverse state laws. Such a policy calls for the application of the rule in the Bulova case, supra.

■ This brings us now to the real question in the case, and that is, "Who is the owner of the name PADDY?" There is no doubt that the word PADDY is a fit subject to be registered as a trade-mark. Ownership in it must be determined as between the parties, by priority of appropriation and use. Columbia Mill Co. v. Alcorn, 150 U.S. 460, 14 S.Ct. 151, 37 L.Ed. 1144; United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141. The nature of the use requires that the mark be affixed to the goods which it purports to distinguish, or to wrappers or packages containing the goods, or labels attached thereto, and that these goods be sold with the mark so affixed. Battle Creek Sanitarium Co. v. Fuller, 30 App.D.C. 411; In re Gregg & Sons, Inc., 58 App.D.C. 70, 24 F.2d 898; Walter Baker & Co. v. Delapenha, C.C., 160 F. 746; 2 Nims: Unfair Competition and Trade-Marks, p. 626. It is important to distinguish from this nature of use requisite to acquiring ownership the nature of use constituting a "use in commerce" as defined in the trade-mark statute, 15 U.S.C.A., § 1127, and required by section 1051 of that statute as a condition precedent to valid registration of the mark by its owner. Thus, ownership of the trade-mark must be determined by a sale of the goods with the mark affixed to them, whereas the "use in commerce" under the statute is determined by either a sale or transportation in commerce of such goods. Therefore, the plaintiff's shipment of May 31, 1949, to his New York office is a use of the mark in commerce and would entitle the plaintiff to statutory registration if he were then also the owner of the mark, 15 U.S.C.A., § 1051; but this shipment being a mere transportation and not a sale could not give rights to ownership in the plaintiff because of the requirement that the goods be *sold* with the mark attached. Battle Creek Sanitarium Co. v. Fuller, supra. The plaintiff is saved, however, in the question of ownership by his shipment of July 14, 1949, to a purchaser in New York of a machine bearing the PADDY mark.

■ The next question with regard to this shipment is whether or not it was made in good faith or was merely a token conformity with the statute in order to bolster his claim for the trade-mark registration. He could gain no rights in the latter case. Phillips v. Hudnut, 49 App.D.C. 247, 263 F. 643. If, however, he could when he applied the mark to the goods show that he also intended in good faith to continue its use, this single instance of use is sufficient to establish his ownership. Walter Baker & Co. v. Delapenha, supra; Wallace & Co. v. Repetti, Inc., 2 Cir., 266 F. 307. I find that there is an absence of evidence to indicate

bad faith on the part of the plaintiff. I find that by the shipment of July 14, 1949, of a PADDY-labelled machine with the intention of continuing to use that name, plaintiff acquired ownership in the trade-mark PADDY, unless the defendant can show that it obtained rights to it prior to that date.

The defendant relies upon the chattel mortgage on all of the Paddy Company's assets and good will as the basis of Herbits' power to authorize it to use the Paddy mark. Aside from the scanty evidence to support the defendant's burden of proof on this point, it is noted at the very start that the chattel mortgage did not and could not convey any trade-mark rights of the PADDY Machine Company as the instrument did not purport to convey the company's franchise and business and thus is invalid as an assignment of the company's good will and trade-mark, because the latter species of property cannot be owned in gross and therefore cannot be sold or transferred apart from the franchise and the business of the company. In re Leslie-Judge Co., 2 Cir., 272 F. 886. The only employment of the PADDY name by the defendant itself is confined to various forms of advertising, circulars, and periodicals. It is well settled that such advertising use cannot confer ownership. Thus the defendant has failed to connect itself with the prior use which can be the basis of trade-mark ownership.

I find that there was no abandonment by the plaintiff Mendes from the first day that he used the name PADDY in 1939. He did suspend the use of it, but only until the real owner of the mark could be determined and not with the intent to abandon it This was not an abandonment which would place the mark in the public domain.

I find that the use of the name PADDY by the defendant in intra-state commerce would seriously affect inter-state commerce.

The defendant's counterclaim for an injunction and damages must be dismissed by reason of the fact that the plaintiff is herein determined to be the owner of the trademark and, as such, acted on his own rights.

Conclusions of law

From the foregoing I conclude and rule that the Trade-Mark Registration No. 521,322 dated February 21, 1950, is a valid registration of the name PADDY.

I conclude and rule that the plaintiff is the owner of the Trade-Mark Registration No. 521,322.

I further conclude and rule that the plaintiff is entitled to an injunction against the defendant's use of the name PADDY in either intra-state or inter-state commerce.

I conclude and rule that the defendant's counterclaim must be dismissed.