## NORTH & JUDD MFG. CO. v. KRISCHER'S MFG. CO. OF CONNECTICUT, Inc., et al.

No. 2364.

District Court, D. Connecticut.

Aug. 13, 1935.

740

Henry E. Rockwell, of New Haven, Conn., Horace L. Rockwell, of Hartford, Conn., and Edmond M. Bartholow, of New Haven, Conn., for plaintiff.

Henry F. Parmelee, Abraham S. Weissman, and John H. Weir, all of New Haven, Conn., for defendants.

THOMAS, District Judge.

On June 18, 1934, plaintiff brought suit against the two Krischer companies for infringement of copyright and unfair competition. Nine days later, by amendment to the bill, it charged trade-mark and patent infringement against the same two defendants. Five days after that it summoned O. B. North & Co., Incorporated, Abraham Molstein, and Maurice H. Bailey as additional parties defendants. At the conclusion of the trial, on proper motion, the bill was dismissed as to the three defendants just named because the plaintiff had failed to sustain the burden of proof respecting the allegations contained in the last amendment which charged that those three defendants had committed the infringing acts in collusion with the other defendants and that they broke their covenants of sale.

A technical infringement of copyright has been admitted by both the Krischer companies. This leaves three issues: First, infringement of a design patent; second, infringement of trade-mark; and, third, unfair competition.

The difficulties between the parties find their source in the purchase by the plaintiff in June, 1930, of certain assets of the O. B. North Company, and the purchase by the Krischer companies, in 1933, of the factory formerly occupied by the O. B. North Company.

The evidence shows that on June 25, 1930, the plaintiff purchased from the O. B. North Company practically all its assets, except the land, buildings, accounts and bills receivable, cash, securities, bank balances, books of account, and any and all records other than production records. The contract of sale provided that the O. B. North Company should not engage for a period of five years in the business of manufacturing or selling hardware of the kind then manufactured by it nor allow its name to be used in connection therewith, except by the plaintiff.

The O. B. North Company was to continue for all purposes and have the powers and privileges it always possessed, except those taken from it by the contract. Among the assets purchased by the plaintiff were the trade-marks and the trade-names of O. B. North & Co., Incorporated, and particularly the arrow trade-mark involved in this suit. At the same time, Molstein and Bailey, who had been associated with O. B. North & Co., Incorporated, agreed not to engage or become interested in like business for the same five-year period.

In 1931 the Krischer companies leased the plant formerly occupied by O. B. North & Co., Incorporated, and in 1933 purchased it, and after putting the factory in condition began the manufacture of saddlery hardware. Thereafter occurred the events of which the plaintiff complains.

From the contract and the evidence it appears that the plaintiff intended to suppress and destroy, as much as possible, the value of the good will of O. B. North & Co., Incorporated, within five years because O. B. North & Co., under the terms of the contract, was restrained from engaging in that business for five years and was privileged to resume the same and use its old name at the expiration of that period of time.

When the plaintiff published its very comprehensive Catalogue No. 89, Plaintiff's Exhibit No. 1, in 1933, it made no reference to the O. B. North & Co.'s lines of hardware or to the arrow brand of merchandise formerly manufactured by O. B. North & Co., Incorporated. This was the situation when the labels printed by the plaintiff are examined and all reference to O. B. North & Co., Incorporated, is eliminated and only the arrow is preserved. See Plaintiff's Exhibit 11. The good will attached to the arrow was not nourished or nurtured much more than the good will attached to the name O. B. North & Co., Incorporated, nor much more than it had to be by the plaintiff. The evidence establishes the fact that North & Judd only infrequently received orders specifying the O. B. North & Co., Incorporated, or arrow line of hardware in the two years prior to suit. The plaintiff, it would seem, would not have been so sensitive to the acts complained of, nor would it have put the unfavorable construction which it did on the acts complained of with reference to Molstein and Bailey, if it had not sought to destroy, rather than to preserve, the good will attached to the name and the mark which it apparently hoped the public would forget within the five-year period specified in the contract. The attitude of the plaintiff toward the good will attached to the name of O. B. North & Co., Incorporated, or to the arrow line of hardware, both of which were old and well known among the trade, may have arisen when Krischer came along and became a very aggressive competitor. Their aggressiveness was watched very carefully by the plaintiff, and doubtless the acts and statements of certain other persons were immediately charged against the Krischers. The evidence is not sufficient to establish actual or implied authority for such statements with which to charge the defendants. In fact, the record discloses that whenever statements were made by persons which might mislead people into thinking that Krischer succeeded to the patterns or good will of O. B. North & Co., Incorporated, Krischers took steps to correct such impressions directly they were brought to their attention. The statements made by Smith, Mixer, and Hagelin were true—to the effect that Krischer had bought the O. B. North & Company plant—but the statement was made at least three years after the plaintiff the North & Judd Company had purchased the hardware business of O. B. North & Co., Incorporated, and had for a period of five years restricted that company from using its name, not in general, but in the hardware business, and notice had been sent to the trade advising the trade all over the country of the deal between O. B. North & Co., Incorporated, of New Haven, and North & Judd of New Britain.

▆ Neither by themselves, nor coupled with the other acts committed by the Krischer companies, of which complaint is made by the plaintiff, is there any evidence which sustains the plaintiff's burden of proving the unfair competition charged in the bill.

As already noted, in addition to the question of unfair competition, this case, involves issues of infringement of a trademark registered under the Trade Mark Act of 1905, as amended, 15 USCA § 81 et seq. —copyright infringement as well as infringement of a design patent.

▆ The trade-mark registration which is the predicate for this suit is No. 206,438 of December 1, 1925, issued in the name of O. B. North & Co., Incorporated. The mark is the representation of an arrow and is used for various articles of saddlery hardware. The arrow is a long, slender arrow inclined at an angle of 45° from horizontal and points to the upper right-hand corner. The mark as used by O. B. North & Co., Incorporated, almost always had either the letters O. B. N. & Co. superimposed, or else the name of O. B. North & Co. superimposed or running along the shaft of the arrow, or subsequently, when acquired by the plaintiff, it had the name North & Judd along the shaft of the arrow.

Now, while in the case of a technical trade-mark duly registered under the statute it may not be necessary for the plaintiff, in order to prevail, to show that the goods of the defendant have been palmed off (and there is no evidence to that effect here), and while infringement is not avoided by the use of accessory features with the registered trade-mark, and "it goes without saying that one has no right to incorporate the mark of another as an essential feature of his mark," and while the newcomer in the field should avoid rather than cause confusion, nevertheless this issue must be resolved in favor of the defendants. The striking feature of the Krischer mark is the blocky "K." The arrow associated with the "K" is so small and so insignificant as to make it difficult

to perceive, and while the attorney for defendants advised the plaintiff that defendants were under no legal or moral obligation to refrain from using it, they actually did cease to use it and blocked it out and eliminated it everywhere before the trial commenced. There is no substantial evidence of confusion. The little testimony produced regarding confusion was to the effect that there was some inquiry about the purchase of the plant by the Krischer company, but this was not at all convincing. Certainly the arrow in the Krischer label is not only not the distinctive and dominating feature of the trade-mark, but it is hardly a noticeable part of the mark.

There is no deceptive similarity whatsoever in the defendants' mark to the plaintiff's mark. There is no confusion and there is no legal basis for equitable relief or for damages. Some cases hold that there is no infringement where the two marks, considered as a whole, are different even though there is an element in the alleged infringing mark which is identical with an element in the plaintiff's mark. In Bass, Ratcliff & Gretton Ltd. v. Henry Zeltner Brewing Co. (C. C.) 87 F. 468, affirmed Id. (C. C. A.) 95 F. 1006, there was a red triangle common to both. In Liggett & Myers Tobacco Co. v. Finzer, 128 U. S. 182, 9 S. Ct. 60, 32 L. Ed. 395, the star was common to both marks. In Ironsides Co. v. Citizens' Wholesale Supply Co., 51 App. D. C. 253, 278 F. 336, a shield was common to both marks. In Louis Meyers & Son, Inc., v. O'Callaghan & Fedden, Inc., 57 App. D. C. 181, 18 F.(2d) 831, there was a representation of the sun common to both marks which appellants used in conjunction with its name or initials. In Galena-Signal Oil Co. v. W. P. Fuller & Co. (C. C.) 142 F. 1002, there was a star common to both marks.

There was some variation between the trade-mark registered and the trade-mark used and proved, but even treating the trade-mark proved as a common-law mark there has been no infringement by the defendants' mark. Even the cases upon which plaintiff relies and from which it quoted extensively, cases like Bass, Ratcliff & Gretton v. Christian Feigenspan (C. C.) 96 F. 206; Panitz v. University Clothes Inc., 59 App. D. C. 299, 40 F.(2d) 811, 812, inevitably lead to the conclusion already reached on the state of the proofs in the case at bar.

■ Defendants presented all of their case through the plaintiff's witnesses because plaintiff called the defendants Molstein and Bailey to testify in its behalf, and it likewise called Max Krischer and Charles Rosenbaum, the two who own and operate the Krischer companies. The plaintiff having called these witnesses was bound by their testimony.

■ We now reach a consideration of the copyright and design infringement. The Krischer companies admit infringement of plaintiff's copyright of its catalogues. They printed about 137 catalogues and on the testimony of the plaintiff's witnesses submitted a sample to the secretary of the association of which the plaintiff was a member with the request that it be submitted to the plaintiff. That this catalogue was submitted to the plaintiff is not denied by defendants. After only two copies were given to one prospect in Indiana, a restraining order was granted upon the application of the plaintiff and the marshal seized the remaining infringing material on hand and now has them in his possession. The conduct of the officers of the Krischer companies is not consistent with the claim made by plaintiff that there was a deliberate and malicious attempt to mislead and confuse. One who wants to steal does not send notice in advance advising his victims of his intentions. The plaintiff is entitled to recover $250 damages from the Krischer companies for this infringement, and it is further entitled to a decree that all infringing copies, as well as all plates, molds, matrices, or other means for making such infringing copies be delivered up, under oath, for destruction.

■ The design patent in suit is No. 91,813, granted March 27, 1934, which is a design for a buckle. There is sufficient identity of design between the plaintiff's buckle and the buckle of defendants' manufacture to establish infringement. In this case "seeing is believing." The rule in this circuit was expressed by Judge Rogers, speaking for the Circuit Court of Appeals in Borgfeldt v. Weiss, 265 F. 268, at page 271: "The plaintiff's patent being valid, there remains the question whether the defendant infringes. The question of infringement turns upon whether there is identity of appearance; whether the effect produced upon the eye is the same; whether there is substantial identity of design; and the persons to be deceived are not the experts, but

the ordinary observers, giving such attention to the matter as purchasers usually give. That is the test laid down in Gorham Mfg. Co. v. White, 14 Wall. 511, 20 L. Ed. 731, a case which has never been overruled."

I therefore conclude and hold that the design patent is infringed and that the plaintiff is entitled to an injunction. Plaintiff waives the accounting because only a very small quantity of buckles was manufactured before notice was given the Krischer companies. Nevertheless the plaintiff is entitled to an award of $250, which is the minimum damage fixed by statute. Costs will be taxed in favor of the plaintiff.

Submit decree accordingly properly consented to as to form.